# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Nash*, 2013 IL App (1st) 113366

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEITH NASH, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-11-3366 |
| Filed | June 12, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction for attempted first degree murder arising from an incident in which he stabbed his girlfriend during an altercation, the appellate court held that the trial court did not abuse its discretion in admitting evidence concerning defendant's assault on his girlfriend a few months earlier, since defendant had a bench trial, the evidence was admitted to show defendant's state of mind, motive and intent, and the probative value of the evidence was not outweighed by the danger of unfair prejudice. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-12868; the Hon. Vincent M. Gaughan, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier and Levi S. Harris, both of State Appellate Defender's Office, of Chicago, for appellant. |
|---|---|
| | Anita M. Alvarez, State's Attorney, of Chicago (Michelle Katz and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Neville and Justice Sterba concurred in the judgment and opinion. |

## OPINION

¶ 1    After the defendant Keith Nash and his girlfriend Denise Rules had argued, Denise sought to get away from Nash in a car driven by her brother when defendant suddenly reached through the open car window and stabbed her. Nash was charged with attempted first degree murder and aggravated domestic battery. A bench trial resulted in a conviction of Nash for attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2006)). The trial court sentenced Nash to prison for 7½ years.

¶ 2    On appeal, Nash contends that he was denied a fair trial when the trial court permitted the State to introduce other-crimes evidence that took place less than four months earlier. During that incident, the couple argued as well, and Nash chased after Denise as she attempted to flee in her car. He crashed his car into the rear of her car and then punched out the driver's side window and repeatedly punched Denise in the chest. The State proffered that this evidence was relevant to Nash's state of mind, motive, and intent, and separately, that it was admissible as propensity evidence of a prior incidence of domestic violence (725 ILCS 5/115-7.4 (West 2010)). Nash argued that the prior altercation was not relevant to the case at bar and that its prejudicial effect outweighed any probative value of the evidence. The trial court admitted the evidence as proof of Nash's state of mind, motive, and intent, but not for propensity. The trial court also determined that the probative value of the evidence was not outweighed by the danger of unfair prejudice to Nash. We affirm.

¶ 3                            Background

¶ 4    Denise testified that on June 26, 2010, while she was working at a McDonald's restaurant, Nash came in and began calling her names and screaming at her to finish her shift so that he could talk to her. When she was done for the day, her brother, Shawn Rules, arrived to pick her up.

¶ 5    Denise, Shawn, Nash, and an acquaintance then got into the car and began driving to the home she shared with Nash. Shawn drove, the acquaintance sat in the front passenger seat,

and Denise and Nash sat in the backseat. Along the way, Nash began to grab and pull on Denise's shirt, call her names, and threaten to "smack" her, "beat [her] up," and "kill [her]." Denise believed that Nash was mad because his sister had told him that Denise had received text messages from another man. Shawn told Nash to stop calling Denise names, and the two men began to argue.

¶ 6    Once at the home, everyone exited the car. Nash started grabbing Denise, pulling her clothing and pushing her against a gate. Shawn told Nash to stop putting his hands on her. Denise was then able to get away from Nash, she told him that she "was leaving him," and she ran upstairs to get her belongings. Some "boys" that were outside helped her get her things, and when she came back outside about five minutes later, Shawn and Nash's quarrel had escalated into a physical confrontation. Denise tried to stop the fight by telling Shawn she was ready to leave.

¶ 7    Denise testified that she got back into the car with Shawn and the acquaintance, and they drove away. At the end of the block, however, Denise realized that she had forgotten her phone. They circled back to the home. As Shawn was about to stop the car in front of the home, Nash ran toward the car, reached his arm through Denise's open window, and then ran around the back of the car to the front driver's side window. Denise saw that Nash had a knife in his hand and that he was trying to stab Shawn, who suddenly drove away. It was then that Denise noticed she was bleeding from stab wounds. Shawn drove to a hospital. Denise was subsequently transferred to another hospital where she was treated for injuries to her liver and lungs over the next two weeks.

¶ 8    In regard to the trial court's ruling on the other-crimes evidence, Denise testified to the incident that took place on March 7, 2010, also involving an argument with Nash and an attempt by her to get away from him. Nash became upset because he did not want Denise to leave; nevertheless, she got into her car, with her daughter, and began to drive away. Nash, following in his car, crashed his car into the rear of Denise's car, approached Denise's car, punched out the driver's side window, reached inside the car, and began punching Denise in the chest, before getting back into his car and leaving.

¶ 9    The defense attempted to raise a number of inconsistencies in Denise's trial testimony from statements she made to police, to hospital staff, and to the State's Attorney's office regarding the two altercations. This evidence showed that Denise had spoken to a police officer about the June 26 incident while hospitalized and had given a written statement to an assistant State's Attorney. In those statements, she claimed that she and Nash had been dating for five years, rather than the two years she testified to at trial. She failed to report that Nash was shouting at her inside her workplace, that he had grabbed her shirt, that he told her he was "going to kill" her, or that he had pushed her against a gate. She also failed to report that she had gone inside the home to get her belongings, that some boys had helped her do so, or that Nash had tried to stab her brother. In addition, Denise told a doctor at the hospital that she was stabbed by an unknown person with an unknown object.

¶ 10    Denise explained that when she initially talked to the police, she had just been brought into the hospital by ambulance, she was in a lot of pain and on morphine, and feeling the shock from the attack. She testified that when the officer asked her to tell him "as much as

[she] could," she thought that she had told him everything, but that she "wasn't in [her] right state of mind [to be] able to tell him every detail." As for her written statement, she testified that she was in so much pain that she had signed the paper without reading it, that she was still drowsy, and that she told the assistant State's Attorney as much as she could. Denise acknowledged that she had not originally told the police about her brother's involvement because she did not want him to get in trouble.

¶ 11    The defense also elicited that Denise had spoken to a police officer about the March 7 incident, but that she had not told the officer that her daughter was in the car or that Nash had driven into her car, and she had reported that the incident took place at a location other than the one she identified at trial. Denise acknowledged that Nash was charged in connection with the March 7 altercation, but that she did not appear in court, and the case was dismissed. She continued to date Nash because he apologized to her, and his uncle fixed the window of her car.

¶ 12    Nash testified that he and Denise argued on June 26, 2010, while Denise's brother Shawn was driving them from McDonald's to Nash's home. Nash became upset because he discovered a text message on her phone from another man. He testified that he and Denise began yelling at each other, but that the argument did not turn physical. After the group arrived at the home, Nash called Denise a "bitch" and "whore." Shawn told Nash to stop talking to Denise like that and shoved Nash. The two of them began to fight. Nash fell to the ground and Shawn reached into his pants, retrieved a box cutter, and cut Nash twice before he was able to get away. Nash ran inside to get a knife and Shawn chased after him. When Nash came out, he realized that Shawn, Denise and the acquaintance had driven away. Nash began walking back inside, but when he got to the top of his porch, he saw them returning. Believing they were coming back so Shawn could harm Nash and his family, Nash "had a nervous reaction" and "ran towards the car and stuck [his] arm *** out, not looking in the direction where [he] was pointing the [knife]." As to the March 7 incident, Nash admitted that he had broken the window of Denise's car, but denied running into her car or punching her in the chest.

¶ 13    At the close of evidence and argument, the trial court found Nash guilty of attempted first degree murder. Nash now appeals that judgment, contending that the trial court abused its discretion and denied him a fair trial by admitting the other-crimes evidence.

¶ 14                              Analysis

¶ 15    Other-crimes evidence is generally inadmissible to demonstrate propensity to commit the charged crime, but is admissible to prove intent, motive, *modus operandi*, identity, absence of mistake, or any relevant fact other than propensity. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003). Even where evidence is otherwise admissible, a trial court can exclude the evidence where the probative value is substantially outweighed by the danger of unfair prejudice to a defendant. *Donoho*, 204 Ill. 2d at 170 (citing *People v. Illgen*, 145 Ill. 2d 353, 365 (1991)). The trial court's decision to admit other-crimes evidence is reviewed for abuse of discretion and will not be overturned unless that decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Young*,

381 Ill. App. 3d 595, 600 (2008).

¶ 16    Here, the trial court granted the State's pretrial motion to admit evidence of Nash's prior assault on the same victim under similar circumstances–an argument followed by an attempt by Denise to flee in a car. The trial court found that the evidence was admissible as proof of Nash's state of mind, motive, and intent, and that the probative value of the evidence was not outweighed by the danger of unfair prejudice to defendant.

¶ 17    In challenging the ruling, Nash claims that the evidence was not admissible for any relevant purpose. He maintains it could only demonstrate that he "is a bad boyfriend who has a bad temper," or he is a "bad person deserving punishment," and that it has no bearing on his state of mind, motive, or intent during the incident. The State responds that Nash's controlling nature and rage in the earlier domestic situation provided insight into Nash's intent in this case. The State also suggests that the earlier incident had a direct bearing on Nash's motive here because, in both incidents, Nash responded similarly when Denise attempted to leave him.

¶ 18    The principle that prior assaults against a victim of a crime that defendant is charged with committing is probative of intent or motive is well established. *People v. Abraham*, 324 Ill. App. 3d 26, 35 (2001). Nash's earlier assault on Denise was relevant to show his animosity, and hostility toward, and attempt to dominate, Denise, particularly in circumstances when they had argued and she attempted to flee. This evidence is also relevant because evidence which shows that an event was not caused by accident tends to show that it was caused intentionally (*Illgen*, 145 Ill. 2d at 366), and here, the evidence of the prior incident tends to contradict Nash's contention that his stabbing of Denise was a "nervous reaction," or done in self-defense.

¶ 19    Nash contends that the State did not make a threshold showing that the prior crime took place or that Nash was involved in it. He contends that the evidence showed that *something* happened that day, but Denise's testimony about the incident was "so impeached that it was unworthy of belief."

¶ 20    Before other-crimes evidence may be admitted, the State must show that a crime took place and that defendant committed it or participated in its commission; it need not prove defendant's involvement beyond a reasonable doubt, but it must provide more than a mere suspicion. *People v. Oaks*, 169 Ill. 2d 409, 454 (1996). Denise testified that after she and Nash argued on March 7, 2010, Nash became upset when she tried to leave. Although Denise's testimony was impeached on the presence of her daughter in the car and the rear-end collision, Nash admitted that he had punched out her car window on that occasion.

¶ 21    The impeachment of Denise on some of the details of the incident affected the weight to be given to her testimony (*People v. Brooks*, 187 Ill. 2d 91, 132 (1999)), but the account she provided, which was corroborated on the essential elements by Nash and her statement to police, sufficiently established more than a mere suspicion that the crime had occurred and that Nash was involved in it (*Oaks*, 169 Ill. 2d at 455-56).

¶ 22    Finally, Nash contends that even if the evidence was otherwise admissible, it should have been excluded because the evidence was more prejudicial than probative. When deciding whether to admit evidence of other crimes, the trial court must weigh the probative value of

the evidence against its prejudicial effect, and evidence must be excluded when its prejudicial effect "substantially outweighs" its probative value. *Illgen*, 145 Ill. 2d at 365. The determination of whether the probative value of other-crimes evidence outweighs its prejudicial effect rests within the sound discretion of the trial court (*People v. Hale*, 2012 IL App (1st) 103537, ¶ 24), and the court's ruling will not be disturbed absent an abuse of that discretion (*People v. Ward*, 2011 IL 108690, ¶ 21).

¶ 23    As previously found, the other-crimes evidence was probative of Nash's motive and intent during the incident because it tended to establish Nash's hostility toward Denise. The incidents were factually similar–each involved Nash physically attacking Denise after they argued and she attempted to flee. In addition, the prior encounter was recent, having taken place less than four months before. *Donoho*, 204 Ill. 2d at 184-86.

¶ 24    We further observe that Nash was tried in a bench trial rather than by a jury. The rule generally barring other-crimes evidence is based on the belief that the introduction of the evidence may over-persuade a jury to convict a defendant only because the jury believes the defendant is a bad person deserving punishment. *Donoho*, 204 Ill. 2d at 170. In a bench trial, this fear is assuaged; it is presumed that the trial court considered the other-crimes evidence only for the limited purpose for which it was introduced. *People v. Deenadayalu*, 331 Ill. App. 3d 442, 450 (2002). There is no indication in the record that the trial court considered the other-crimes evidence outside of the announced parameters when it reached its decision. Under these circumstances, we find no abuse of discretion in allowing the other-crimes evidence, and that the entry of this evidence did not deny defendant a fair trial.

¶ 25    Because we find that the evidence was properly entered as an exception to the rule against evidence of other crimes, we need not address the State's argument that the evidence could also have been entered to prove propensity or that the admission of the evidence was harmless error. Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 26    Affirmed.