2022 IL App (1st) 210466-U

No. 1-21-0466

Order filed September 15, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 DV 71393 |
| | ) | |
| MARVIN BROWDER, | ) | Honorable |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Lampkin and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant forfeited his claim that the trial court erred in granting the State's pretrial
motion to admit proof of a prior violation of an order of protection.

¶ 2    Following a jury trial, defendant Marvin Browder was found guilty of violating an order

of protection and was sentenced to concurrent terms of 150 days in jail and 1 year of probation.

On appeal, he argues the trial court erred in allowing the State to present evidence of a past act of

domestic violence where the undue prejudicial effect in admitting the evidence outweighed its probative value. We affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4      The record reflects that Juaquita Jackson and Browder were former domestic partners and share a child, M.B. On December 6, 2017, the trial court issued a two-year civil plenary order of protection, listing Jackson and her four minor children, including J.J., J.D., and M.B., as protected persons. The order of protection instructed Browder to "stay away" from Jackson and the other protected persons. On March 29, 2018, Browder was charged by misdemeanor complaint with two counts of violating the order of protection (720 ILCS 5/12-3.4(a)(1) (West 2018)), premised on an incident occurring on March 7, 2018, in which Browder approached and spoke to J.J. and J.D.

¶ 5      Prior to trial, the State filed a motion to admit proof of other crimes, namely, Browder's prior act of domestic abuse and three prior violations of an order of protection that occurred in 2012 and 2017. The State argued that the four separate past acts demonstrate Browder's "propensity to commit domestic violence and his knowledge, intent, motive, and continuing hostility."

¶ 6      First, the State proffered an incident that occurred on March 7, 2012, when Browder violated an order of protection. Browder confronted Jackson inside her apartment while J.J. and J.D. were present and refused to leave. Jackson fled her apartment with her children.

¶ 7      The second prior act involved a domestic battery on May 19, 2012, in which Browder argued with Jackson, slapped her face in front of J.J. and J.D., and slammed a door on her finger,

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

cutting it.

¶ 8    The third act involved Browder's violation of an order of protection on February 1, 2017. Browder parked his vehicle outside Jackson's apartment while she and her children were home. Five minutes later, the police arrived and arrested him as he sat in his vehicle.

¶ 9    Last, the State proffered a fourth prior act that occurred on February 3, 2017, when Browder violated an order of protection while at the courthouse. During a hearing where Jackson and Browder were both present, the court extended its order of protection against Browder. Jackson exited the courtroom about 10 minutes after Browder had left, and while she was in the hall, Browder walked toward her, "shoulder-checked" her, and warned her that " '[T]he judge ain't here right now. I'll smack [your] a*** and you gotta go home.' " Jackson retreated to the courtroom and informed the deputies. The Chicago Police Department (CPD) responded to the incident and searched the area but could not find Browder.

¶ 10    Browder filed a response to the State's motion, arguing that allowing the prior acts into evidence would be overly prejudicial, as they were too remote in time, lacked corroboration, and were substantially different from the present case.

¶ 11    After hearing arguments, the trial court granted the State's motion as to the two 2017 incidents but denied the motion as to the two 2012 incidents, explaining that admitting all four past acts would be unduly prejudicial. The court reasoned it "ma[de] more sense" to exclude the two 2012 convictions as they were less proximate in time, and the domestic battery incident was less similar to the current pending charge. The court found that the 2017 incidents were "proximate in time," and factually similar, as they involved the "same family." The court additionally found the 2017 incidents were sufficiently corroborated as (1) the February 1 incident resulted in an arrest

outside the protected address, where Browder occupied the same vehicle he occupied in this case and (2) the CPD responded to the February 3 incident at the domestic relations court, and a report was made. The court therefore found admission was "highly relevant" to the current charges and not unduly prejudicial.

¶ 12    We summarize the facts adduced at trial. We note the State ultimately did not present evidence of the February 1, 2017, incident.

¶ 13    At trial, J.J. testified that on March 7, 2018, she was walking home from school with her younger sister J.D. Browder drove up to them in a black truck with the windows down and stopped. J.J. called her mother, Jackson, and followed Jackson's instructions to wait at her aunt's house until Browder was gone. After waiting about 5 to 10 minutes, J.J. and J.D. continued walking home. Browder pulled up again alongside them as they walked, repeatedly yelled their names, and called J.J. a " 'little [b***].' " J.D. started crying. J.J. called her mother again, and Browder said, " 'I don't care about you calling your mother.' " Browder also drove his truck in front of J.J. and J.D. as they attempted to cross the street. J.J. and J.D. ran home and called Jackson. After Jackson arrived home, J.J. talked to the police.

¶ 14    J.D. testified consistently with J.J. regarding the March 7, 2018, incident involving Browder.

¶ 15    Jackson testified that she lived with her four children, including J.J., J.D., and the child Browder fathered. In 2015, Jackson filed a case involving "[p]arentage and child support." The court determined M.B. was Browder's son, and Jackson requested an order of protection against Browder.

¶ 16    Jackson testified that on February 3, 2017, she and Browder were in court for a hearing on the order of protection. The court "exten[ded]" the order and directed Browder to "stay away" from Jackson. At the conclusion of the hearing, the sheriff instructed her and Browder to leave at different times. Jackson left about 10 or 15 minutes after Browder left, but she ran into Browder in the hallway. While she attempted to ignore him, Browder walked toward her, "bumped" her shoulder, pushed her, and said, " 'The Judge ain't here now, I will still smack your a***, you do got to go home.' " Jackson reentered the courtroom, informed the sheriff about the encounter, and called the police. The police arrived but could not find Browder. The police took Jackson's statement.

¶ 17    On December 6, 2017, Jackson and Browder attended a hearing regarding Jackson's second request for an "extension" of the order of protection.[2] The court granted a two-year extension and ordered Browder to "stay away" from Jackson and her children.

¶ 18    Jackson testified that on March 7, 2018, at about 3 p.m., she received a call at work from J.J. and could hear J.D. crying in the background. Jackson told J.J. to wait at her aunt's house until "he leaves" and then "hurry" home. About 10 to 15 minutes later, Jackson received a second phone call from J.J., and she then called 311 to report what happened. Jackson called the police when she arrived home. When the police arrived, they could not find Browder in the area and no arrests were made.

¶ 19    A Chicago police officer testified that she and her partner responded to a call of an order of protection violation at the courthouse on February 3, 2017. The offender was not located but a

---

[2]While Jackson testified that the order of protection was extended on December 6, 2017, the order of protection included in the record reflects that the order was "issued" on that date.

report for the violation of the order of protection was completed.

¶ 20    Nikkio Williams, who had been in and out of a relationship with Browder for about six years, testified for the defense. She testified that on March 7, 2018, she went to Browder's home at around 3 or 3:30 p.m. Browder was home, and he did not leave until approximately 9 p.m.

¶ 21    On January 17, 2019, the jury found Browder guilty of violating an order of protection. By agreement of the parties, the court immediately proceeded to a sentencing hearing. Browder was sentenced to concurrent terms of 150 days in jail and 1 year of probation. The court noted that Browder approached the minors and yelled at them, in violation of a court order. It found Jackson's testimony as to Browder's prior violation at the courthouse credible.

¶ 22    On February 7, 2019, Browder filed a motion for new trial, arguing that the State failed to prove him guilty beyond a reasonable doubt. He further argued that the trial court improperly permitted the State to amend the complaint during trial to include an incident date that was missing from one of the charges. The trial court denied his motion.

¶ 23                                  II. ANALYSIS

¶ 24    On appeal, Browder argues that the trial court erred in admitting evidence of his February 3, 2017 violation of the order of protection, as its undue prejudicial effect substantially outweighed its probative value. Specifically, Browder argues that the facts of the prior violation differ markedly from the instant violations, were far more serious, and involved a different *modus operandi*.

¶ 25    As an initial matter, the State argues, and we agree, that Browder has forfeited our review of his claim for failing to raise it in his written posttrial motion. See *People v. Reese*, 2017 IL 120011, ¶ 60 ("To preserve an issue for review, a defendant must object at trial and raise the

alleged error in a written posttrial motion."). Under certain circumstances, the plain-error doctrine permits review of an otherwise forfeited claim of error. *People v. Johnson*, 238 Ill. 2d 478, 484 (2010). Here, however, Browder has both failed to acknowledge the procedural default and fails to argue on appeal that his claim may be considered under the plain-error doctrine. Browder therefore has also forfeited plain-error review and we must honor the procedural default. See *People v. Hillier*, 237 Ill. 2d 539, 545 (2010) ("A defendant who fails to argue for plain-error review obviously cannot meet his burden of persuasion."); see also Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Forfeiture aside, plain-error review would not excuse the procedural default here.

¶ 26    Under the plain-error doctrine, a reviewing court may address a forfeited claim where a "clear or obvious error occurred," and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *Reese*, 2017 IL 120011, ¶ 60. The defendant bears the burden of persuasion under both prongs of the plain-error doctrine. *Hillier*, 237 Ill. 2d at 539. The initial step in any plain-error analysis is to determine whether a clear or obvious error occurred. *Reese*, 2017 IL 120011, ¶ 60. For the following reasons, we conclude that, even had Browder raised a claim of plain error, the claim would fail as the court committed no clear or obvious error in allowing Browder's past act into evidence at trial.

¶ 27    Generally, relevant evidence of other crimes is admissible "for any purpose other than to show a defendant's propensity to commit crimes" (*People v. Chapman*, 2012 IL 111896, ¶ 19), and may be admitted to prove *modus operandi*, intent, identity, motive, or absence of mistake (*People v. Illgen*, 145 Ill. 2d 353, 364-65 (1991)). However, section 115-7.4 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.4 (West 2018)), provides an exception regarding the admissibility of other crimes to show propensity in domestic violence cases. See *People v. Dabbs*, 239 Ill. 2d 277, 284-85 (2010).

¶ 28    Under section 115-7.4(a), where a defendant is accused of an "offense of domestic violence," evidence of the defendant's other domestic violence offenses is admissible to show the defendant's propensity to commit crimes of domestic violence. 725 ILCS 5/115-7.4(a) (West 2018). Prior to admitting the other-crimes evidence, the trial court must weigh the probative value against any undue prejudice. 725 ILCS 5/115-7.4(b) (West 2018); see *Dabbs*, 239 Ill. 2d at 290-91. In conducting the relevant balancing test, the court may consider "(1) the proximity in time to the charged or predicate offense; (2) the degree of factual similarity to the charged or predicate offense; or (3) other relevant facts and circumstances." 725 ILCS 5/115-7.4(b) (West 2018). If the prejudicial effect of the evidence substantially outweighs its probative value, the court should exclude the evidence. *Illgen*, 145 Ill. 2d at 365.

¶ 29    A trial court's decision to admit other-crimes evidence will not be disturbed absent a clear abuse of discretion. *People v. Wilson*, 214 Ill. 2d 127, 136 (2005). An abuse of discretion occurs when the trial court's ruling is "arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Sutherland*, 223 Ill. 2d 187, 272-73 (2006).

¶ 30    Based on our review of the record, the trial court did not commit a clear or obvious error in admitting evidence of Browder's February 3, 2017 violation of an order of protection. The court found the prior act "highly relevant" and conducted the balancing test required pursuant to section 115-7.4(b), concluding the probative value of admitting into evidence Browder's 2017 violation outweighed the danger of undue prejudice. We agree.

¶ 31    First, the trial court correctly observed that the date of the February 2017 incident was in close proximity to the date of the May 2018 charged offense, as the two incidents were just over one year apart. See *People v. Jackson*, 2014 IL App (1st) 123258, ¶ 42 (prior assault was proximate in time to the charged offense, where it took place about 1½ years before the offense).

¶ 32    Next, the court considered the second factor of the balancing test and determined the 2017 incident was factually similar to the charged offense. Both incidents involved Browder violating an order of protection by aggressively pursuing and verbally confronting members of the family protected by the order. See *People v. Nash*, 2013 IL App (1st) 113366, ¶ 23 (past acts were factually similar to the charged offense, where each incident involved the defendant physically attacking the same victim after an argument).

¶ 33    The trial court last considered other relevant facts and circumstances. It explicitly found that admitting all four prior acts, as requested by the State, would be unduly prejudicial. Obviously, the court here meaningfully considered any undue prejudicial effect of admitting the requested evidence. *Dabbs*, 239 Ill. 2d at 290-91. The court further noted that the February 3, 2017, act was corroborated, as Jackson reported the act to police soon after it occurred, and therefore reliable.

¶ 34     Accordingly, the record supports the court's conclusion that Browder's prior bad act was relevant to and probative of his propensity to violate an order of protection, as charged here (725 ILCS 5/115-7.4(a) (West 2018)) and its prejudicial effect did not outweigh its probative value.

¶ 35     Under these circumstances, had this issue been preserved, we could not conclude the trial court's decision to admit evidence of Browder's prior violation of an order of protection was an abuse of discretion. The trial court thus committed no clear or obvious error in finding the February 2017 incident admissible "for its bearing on any matter to which it is relevant." 725 ILCS 5/115-7.4(a) (West 2018). That said, we must honor Browder's forfeiture of a plain-error claim and the underlying issue on appeal.

¶ 36                                    III. CONCLUSION

¶ 37     For the foregoing reasons, we affirm the judgment of the trial court.

¶ 38     Affirmed.