2024 IL App (1st) 221608-U

No. 1-22-1608

Order filed March 29, 2024

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 1919 |
| | ) | |
| VALENTINO WILBOURN, | ) | Honorable |
| | ) | Carol M. Howard, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MCBRIDE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Conviction affirmed where the trial court did not abuse its discretion in admitting other-crimes evidence that contained factual similarities to the charged offense.

¶ 2     Following a bench trial, defendant Valentino Wilbourn was found guilty of one count of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2016)) against B.M. The trial court imposed a six-year prison term and lifetime sex offender registration. On appeal, defendant

contends that the trial court abused its discretion when it admitted other-crimes evidence involving another victim, S.W. We affirm.

¶ 3    Defendant was charged with one count of criminal sexual assault (720 ILCS 5/11-1.20(a)(2) (West 2016)) (count I) and two counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2016)) (counts II and III) alleging various sexual acts against B.M. that occurred on September 18, 2017.

¶ 4    Prior to trial, the State filed a motion to allow proof of other crimes to prove motive, intent, and propensity. The State set forth B.M.'s allegations as follows. On September 18, 2017, B.M. was 15 years old and staying at her mother's friend's residence. Defendant, then 36 years old, entered the bedroom where B.M. was staying. He rubbed her "butt" and vagina with his fingers. Defendant then pulled down B.M.'s pants and underwear while lying on top of her and began "humping her." Defendant pulled something plastic out of her, and she felt "wet stuff" on her butt. Defendant then left the room.

¶ 5    Next, the State set forth the proposed other-crimes evidence. The first incident concerned a charged aggravated criminal sexual abuse defendant committed against S.W., his niece, between May 5, 2008, and May 5, 2009. S.W. was 14 years old at the time and residing with defendant, then 26 to 27 years old. S.W. woke to defendant "dry humping" her. He was lying on top of her, moving his penis against her vagina over the clothes, and kissing her mouth.

¶ 6    The second incident concerned charged aggravated criminal sexual abuse defendant committed against N.D. between May 15, 2017, and May 15, 2018. N.D. was then 11 years old and sleeping at her cousin's residence when defendant, then 35 to 36 years old, entered the room and woke her by "grabbing her buttocks over the clothes."

¶ 7    The remaining incidents concerned charged aggravated criminal sexual assault and aggravated criminal sexual abuse defendant committed against his daughter, N.W., who was 14 and 15 years old at the time of the events between November 1, 2017, and November 1, 2018. There were more than 10 incidents, many of them similar. Defendant, then 36 to 37 years old, would enter N.W.'s bedroom while she was sleeping and "rub" against her in a sexual way. While N.W. pretended to be asleep, defendant laid on top of her and started "grinding" on her, rubbing his private parts against her bottom and private parts. He would lift her clothes and kiss her back.

¶ 8    During another incident, defendant displayed an extension cord and told N.W. that she could participate in the sexual act or get beaten. Defendant pulled down her pants, licked her vagina, and then directed N.W. to put his penis in her mouth. Defendant grabbed the back of N.W.'s head and moved his penis in and out of her mouth. Defendant then took a "rubber thing" and rubbed his private part against her private part, rubbed her bottom and breast, and placed his mouth on her breasts. N.W. saw "white stuff" on his private part. Defendant told N.W that if she told anyone, he would kill her mother. Defendant also made N.W. watch pornographic videos and told her that she needed to "learn some experience."

¶ 9    During another incident, defendant called N.W. into her mother's room and instructed her to undress, saying, "you know the routine." Defendant had the extension cord and forced N.W. to lie on the bed. Defendant placed a "rubber thing" on his penis, licked her vagina, and then penetrated her vagina. N.W. was in pain and moved. Defendant struck N.W. in the face and instructed her not to tell her mother.

¶ 10    In the motion, the State argued that the other-crimes evidence should be admitted because all the incidents occurred within a 10-year span, there were similarities between the incidents, and

the probative value outweighed the danger of unfair prejudice. In response, defendant contended that admitting the other crimes would be an abuse of discretion, arguing that the proximity in time between S.W.'s allegations and the current offense was too great and there were no factual similarities between N.W.'s and B.M.'s allegations.

¶ 11 At the hearing on the motion, the court acknowledged that admitting all of the incidents into evidence would "clearly be more prejudicial than probative." The court allowed the allegations concerning S.W., noting that the facts were "very similar" as "[defendant] went into a room where a young child or a young girl was sleeping and started humping her." The court noted that although S.W.'s allegations were more than 10 years old, there was controlling case law that admitted proof of other crimes older than 10 years. The court also allowed N.D.'s allegations, finding it "persuasive" that "these young girls were asleep in their bedroom and the defendant came in and touched them or humped them inappropriately." The court stated that whether the incidents occurred over or under the clothes was not dispositive. The court barred evidence of N.W.'s allegations, noting that the factual similarities were not as great, and the allegations would be more prejudicial than probative.

¶ 12 At trial, B.M. testified that on September 18, 2017, she was at the residence of defendant, whom she identified in court, and her aunt. At approximately 3 a.m., B.M., then 15 years old, was in bed with her cousin, pretending to be asleep, when defendant entered the bedroom and touched her buttocks over and under her clothes. Defendant then pulled down her shorts and underwear and "got on top of [her] from the back." Defendant unsuccessfully attempted to penetrate her vagina with his penis. His penis touched her vagina more than twice. Defendant then grabbed something off the dresser and left.

¶ 13    B.M. went to the bathroom, "clean[ed] [her]self off," and texted a friend regarding what occurred. She did not shower. B.M. attended school later that day, and defendant picked her up from school and transported her to his residence. Later, defendant transported B.M. and B.M.'s mother and little brother to Chuck E. Cheese. After they left Chuck E. Cheese, B.M. disclosed to her mother what occurred and was transported to the hospital.

¶ 14    On cross-examination, B.M. testified that defendant used to date her aunt. B.M. slept in the same bed as her cousin, approximately five inches away. Her cousin was not a light sleeper. Defendant was clothed when he entered the bedroom. B.M. did not attempt to wake her cousin and did not say anything during the incident. B.M. did not take her cellphone with her in the bathroom after the incident. B.M. did not disclose what happened to anyone in her aunt's residence. She did not disclose it to her teacher and did not call the police or her mother while at school.

¶ 15    On redirect examination, B.M. testified that she pretended to be asleep because she was scared. She did not immediately call the police because she did not know what would happen.

¶ 16    N.D. testified that in 2017 she resided with defendant, whom she identified in court, and her aunt.[1] As she laid in the bed with her cousin attempting to sleep, someone entered the bedroom. N.D. did not observe who entered, but "felt a hand rub [her] behind" for approximately 10 seconds. She then moved so the individual would know she was awake and observed defendant exit the room. She did not report the incident to anyone because she was afraid of defendant. An incident like this occurred twice.

---

[1] Defense counsel objected to N.D.'s testimony as proof of other crimes, which the court acknowledged as a continuing objection and overruled.

¶ 17    On cross-examination, N.D. testified that she and her cousin slept in a full sized bed, and she did not wake her cousin. She did not think that the individual touching her butt was an accident. N.D. admitted that she was untruthful during her victim sensitive interview (VSI) because she was afraid of defendant. During the VSI, N.D. stated that she thought it was an accident and such an incident only occurred once.

¶ 18    On redirect examination, N.D. testified that she was afraid of defendant because she witnessed him "beat" her aunt multiple times when she was a little girl. On recross examination, N.D. stated that she never disclosed to anyone that she was afraid of defendant.

¶ 19    S.W. testified that on May 5, 2008, she resided with defendant, her uncle, whom she identified in court.[2] Some time between May 5, 2008, and May 5, 2009, S.W. woke to defendant "on top of her," "grinding *** sexually" and kissing her neck, mouth, and face. She and defendant were clothed. S.W. did not disclose the incident to anyone, and she did not continue residing with defendant. In January 2018, S.W. asked defendant about the allegations of him "raping little girls," and he responded, "it's not rape if motherf*** wanted it."

¶ 20    On cross-examination, S.W. testified that she was uncertain of the timeframe of the incident. S.W. and her daughter had since resided with defendant and his new girlfriend, Latoya Nesbit.

¶ 21    Sameera M., B.M.'s mother, testified that on September 19, 2017, B.M. disclosed to her that something happened, and Sameera M. transported her to the hospital.

---

[2] Defense counsel objected to S.W.'s testimony as other-crimes evidence, which the trial court acknowledged as a continuing objection.

¶ 22    The State entered defendant's birth certificate into evidence, establishing that he was born on June 20, 1981.

¶ 23    Defendant presented one witness, Nesbit, defendant's girlfriend, who identified photographs of B.M.'s aunt and Sameera M. she observed on Facebook since the incident.

¶ 24    The court found defendant guilty of aggravated criminal sexual abuse on count III, which alleged that defendant "touched his hand to B.M.'s sex organ," and not guilty of counts I and II.

¶ 25    The court stated that its ruling was "based on the testimony of [B.M.] and *** [S.W.]." The court found S.W.'s testimony that she woke to defendant on top of her, grinding on her and kissing her, "very similar" to B.M.'s testimony that defendant touched her butt on top of her clothes. However, B.M's testimony regarding defendant pulling down her pants and attempting to penetrate her was not corroborated by S.W.'s testimony. The court added that it did not base its finding on the testimony of N.D. because N.D. admitted that she reported something different in the VSI. The court reiterated that its finding was based "solely" on the testimony of S.W. and B.M.

¶ 26    Defendant filed a motion to reconsider and/or for a new trial, arguing, *inter alia*, that the other-crimes evidence should not have been admitted. The trial court denied defendant's motion, stating that it had the "opportunity to observe the witnesses as they testified," including their demeanor, manner, and the substance of their testimony, and found them credible. The court further stated that it "followed the law, in terms of ruling on the motion to admit other crimes evidence."

¶ 27    At sentencing, the court noted that the other-crimes evidence established that the incident with B.M. was not the first time defendant engaged in such behavior. The court imposed a six-year

prison term and lifetime sex offender registration. Defendant did not file a motion to reconsider sentence.

¶ 28    On appeal, defendant contends that the trial court abused its discretion in admitting S.W.'s testimony as proof of other crimes.[3] The State responds that the trial court did not abuse its discretion by admitting S.W.'s other-crimes testimony, and, even if the court did err, the error was harmless.

¶ 29    At the outset, we observe that the summary of B.M.'s proposed testimony in the State's pretrial motion differed in certain respects from B.M.'s testimony at trial. Specifically, the State alleged in the pretrial motion that defendant entered the room, began rubbing B.M.'s butt and vagina with his fingers, and after "humping her," pulled something plastic out of her and she felt "wet stuff" on her butt. At trial, however, B.M. testified that defendant entered the room and touched her buttocks, and after "humping her," grabbed something from the dresser and left.

¶ 30    Notably, the defense objected to S.W.'s and N.D.'s other-crimes evidence during pretrial proceedings on the State's motion and again during trial. Thus, relevant here, the admissibility of S.W.'s other-crimes evidence was before the trial court prior to trial, in relation to B.M.'s proposed testimony, and again during the trial, in relation to B.M.'s actual testimony. Under these circumstances, we review the court's exercise of discretion in allowing S.W.'s other-crimes evidence in view of B.M.'s actual trial testimony.

¶ 31    Other-crimes evidence is generally inadmissible to establish propensity to commit the charged crime. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003). However, when a defendant is accused of specific sexual offenses, such as aggravated criminal sexual abuse and criminal sexual

---

[3] Defendant does not challenge the admission of the other-crimes testimony by N.D.

assault as charged here, other-crimes evidence is admissible to prove propensity, if otherwise admissible under the rules of evidence. *Id.* at 175-76; see also 725 ILCS 5/115-7.3 (West 2022). A trial court may exclude otherwise admissible evidence when the evidence is more prejudicial than probative. *People v. Nash*, 2013 IL App (1st) 113366, ¶ 15.

¶ 32    Section 115-7.3 of the Criminal Code of Procedure of 1963 (Code) specifies that when weighing the probative value of the other-crimes evidence against the prejudicial effect, the following factors may be considered:

"(1) the proximity in time to the charged or predicate offense;

(2) the degree of factual similarity to the charged or predicate offense; or

(3) other relevant facts and circumstances." 725 ILCS 5/115-7.3(c) (West 2022).

¶ 33    A trial court's decision to admit other-crimes evidence is reviewed for abuse of discretion. *People v. Smart*, 2023 IL App (1st) 220427, ¶ 17. We review the trial court's decision, not its reasoning; if the court's decision was ultimately correct, we will affirm even if we disagree with the reasoning. *People v. Degrave*, 2023 IL App (1st) 192479, ¶ 59. This court will not disturb the trial court's decision unless we find the decision to be "arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court." *Nash*, 2013 IL App (1st) 113366, ¶ 15.

¶ 34    Here, we do not find that the trial court abused its discretion in admitting S.W.'s testimony as other-crimes evidence. We find that the trial court properly weighed the probative value of the other-crimes evidence against its prejudicial effect. Defendant contends that S.W.'s allegations were too far removed in time, occurring more than 10 years prior to B.M.'s allegations. "[T]he admissibility of other-crimes evidence should not, and indeed cannot, be controlled solely by the

number of years that have elapsed between the prior offense and the crime charged." *People v. Illgen*, 145 Ill. 2d 353, 370 (1991). No bright-line rule has been established regarding the proximity in time between the prior offense and the charged crime. *Donoho*, 204 Ill. 2d at 184.

¶ 35 Moreover, controlling case law has affirmed admission of other-crimes evidence exceeding 10 years. See *Donoho*, 204 Ill. 2d at 184 (finding that a 12 to 15 year gap between the other-crimes evidence and the charged offense was not too remote); see also *People v. Braddy*, 2015 IL App (5th) 130354, ¶ 37 (acknowledging that a 20-year gap in time was significant but the victim's testimony was credible and reliable to be probative). While this court acknowledges the approximately 10-year gap in time between S.W.'s and B.M.'s allegations, the gap in time alone is insufficient to render the ruling an abuse of discretion. *Donoho*, 204 Ill. 2d at 184 (holding that proximity in time was insufficient, by itself, to declare the admission of the other-crimes evidence an abuse of discretion).

¶ 36 The trial court also considered the factual similarities of S.W.'s and B.M.'s allegations. Defendant's behavior toward each victim was not identical, but there were substantial similarities. The victims were close in age: S.W. was 14 and B.M. was 15. Both were sleeping over at defendant's residence when defendant entered their bedroom at night and forced himself upon them. S.W. testified that she was sleeping and woke to defendant on top of her, kissing her and grinding on her above her clothes. B.M. testified that while she pretended to be asleep, defendant entered the bedroom, touched her buttocks, pulled down her shorts and underwear, got on top of her, and attempted to vaginally penetrate her. Given the factual similarities between the offenses, we do not find that the trial court abused its discretion in determining that the probative value of

the other-crimes evidence outweighed the prejudicial impact. *People v. Wilson*, 214 Ill. 2d 127, 142 (2005) ("As factual similarities increase, so does the relevance or probative value.").

¶ 37    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 38    Affirmed.