NOTICE

Decision filed 06/12/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 210260-U

NO. 5-21-0260

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Saline County. |
| | ) | |
| v. | ) | No. 09-CF-204 |
| | ) | |
| STEVEN D. CUTTRELL, | ) | Honorable |
| | ) | Walden E. Morris, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court did not abuse its discretion in allowing other-crimes evidence in a sexual offense case after finding that the testimony of two victims was more probative than prejudicial.

¶ 2    Following a bench trial, the defendant, Steven D. Cuttrell, was found guilty of 16 counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(b) (West 2008)). The defendant on appeal argues that the circuit court abused its discretion for allowing other-crimes evidence to be introduced at trial. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    This case involves sexual abuse allegations raised by the defendant's daughter, H.C. H.C., born September 9, 1988, lived with her parents and two brothers for a portion of her childhood. In 2003, she confided in her school counselor that she was sexually abused by her father, the

1

defendant. H.C. claimed that the first time that the defendant sexually abused her, H.C. was five years old. The defendant sexually abused her again when she was seven years old. Then, the abuse continued multiple times a week until she was 12 years old. After H.C. reported the abuse in 2003, H.C. and her younger brother were taken into protective custody. The defendant's parental rights were subsequently terminated. H.C.'s mother had been diagnosed with cancer and she passed away in 2004.

¶ 5    In 2009, the defendant was convicted of three counts of predatory criminal sexual assault of another child, B.T., who was the defendant's girlfriend's child. People v. Cuttrell, No. 08-CF-319 (Cir. Ct. Saline County, Mar. 23, 2009). During that trial, the circuit court allowed the introduction of other-crimes evidence of the defendant's offenses against H.C.

¶ 6    On June 11, 2009, the defendant was charged with 60 counts of aggravated criminal sexual abuse of H.C. in violation of section 12-16(b) of the Criminal Code of 1961 (720 ILCS 5/12-16(b) (West 2008)). The defendant was charged with one count of knowingly having H.C. fondle his penis for the purpose of sexual arousal or gratification. A second count alleged the defendant knowingly fondled the vaginal area of H.C., for the purpose of sexual arousal or gratification. Identical counts to those two counts were filed for each month during a 30-month period between August of 1995 through May of 1998, for a total of 60 counts.

¶ 7    On July 28, 2009, the State filed a notice of evidence to be introduced at trial pursuant to section 115-7.3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3 (West 2008)). The State intended to introduce evidence of the defendant's conviction for the three counts of predatory criminal sexual assault of a child, B.T., the defendant's girlfriend's child, in People v. Cuttrell, No. 08-CF-319 (Cir. Ct. Saline County, Mar. 23, 2009). The State additionally provided notice that it intended to introduce evidence at trial regarding offenses against other victims, J.M.

and F.V., as well as uncharged offenses against the victim in this case, H.C. J.M. is the defendant's niece, and F.V. is the daughter of the defendant's cousin. The State subsequently filed an addendum to the notice of its intention to present evidence of offenses against C.S.[1] C.S. is the defendant's sister-in-law. The allegations of the victims were based on incidents that occurred while they were children.

¶ 8     The State filed a motion *in limine* on July 31, 2009, to prohibit testimony of past sexual activity or the reputation of H.C. The State additionally filed, on August 28, 2009, a notice of introduction of evidence of the defendant's acts of domestic violence against H.C. and H.C.'s mother. The State claimed that H.C. witnessed the defendant commit acts of domestic violence against her mother. The defendant was convicted of battery against H.C.'s mother in People v. Cuttrell, No. 91-CF-177 (Cir. Ct. Saline County, Sept. 27, 1991). H.C. was also a victim of domestic violence. The defendant was convicted of endangering the life or health of a child, H.C., in People v. Cuttrell, No. 03-CM-473 (Cir. Ct. Saline County, Sept. 23, 2003).

¶ 9     On September 3, 2009, the defendant filed five separate motions *in limine*. The defendant sought to (1) prohibit evidence of other instances of criminal assaults on F.V., J.M., B.T, and C.S.; (2) prohibit the use of two audio CDs furnished by the State; (3) prohibit evidence regarding the defendant's prior criminal record in People v. Cuttrell, No. 08-CF-319 (Cir. Ct. Saline County, Mar. 23, 2009); (4) prohibit evidence of the defendant's acts of domestic violence against H.C. and against her deceased mother; and (5) prohibit the victim's testimony regarding complaints that H.C. had made to others.

---

[1]The initial's C.S. were the initials of the victim as a minor. C.S. is also referred to as C.C. in the record. C.C. reflects her married name. For clarity, we will use the initials C.S. throughout.

¶ 10    The circuit court held a hearing on September 4, 2009, on multiple motions. The circuit court granted the State's motion *in limine* to preclude the introduction of evidence as to the sexual activity or reputation of the complainant, H.C. The circuit court granted the defendant's motions *in limine* to exclude two CD recordings, to exclude hearsay testimony of statements made by H.C. where she was reporting the incidents, and to exclude evidence of acts of domestic violence against H.C. and her mother. The circuit court stated that it would allow H.C. to testify to acts of domestic violence if she was questioned on her hesitation to report the defendant.

¶ 11    At that same hearing, the circuit court addressed the defendant's motion *in limine* to exclude the introduction of evidence by B.T., F.V., J.M., and C.S., who were allegedly assaulted by the defendant. The defendant argued that there were significant factual differences between the charges that the defendant faced in this case and the prior alleged criminal assaults described by each of the witnesses' testimony. The defendant further argued that the witnesses' ages were different than H.C.'s age when she was a victim and other the alleged assaults were not close in time to the incidents involving H.C. The defendant claimed the prejudicial effect of the evidence would outweigh its probative value.

¶ 12    The State argued that the probative value of the defendant's prior conviction for indecent liberties with a child outweighed the prejudicial value. The allegations by B.T. were similar to H.C.'s allegations in that the defendant touched both B.T. and H.C.'s vaginal areas with his fingers. B.T. was five at the time of the offense. H.C. was also five when the offenses began, and they continued until she was 12. The defendant was in relationships with the mothers of each of the victims and the defendant committed acts of domestic violence against their mothers in front of the victims. In both cases, the defendant committed the offenses while the victim's mother was at

4

work. The State additionally argued that the circuit court had allowed the introduction of offenses against H.C. in the trial involving B.T.

¶ 13    The State next argued about the similarities involving J.M. and H.C. In both cases, the offenses occurred in the defendant's home. J.M. was approximately 13 years old and related to the defendant. The defendant forced J.M. to touch his penis. H.C. had also alleged that the defendant made her touch his penis. The defendant had committed acts of domestic violence against his wife in front of both children. Additionally, the defendant had been drinking alcohol when he committed offenses against both children.

¶ 14    The State argued that the allegations raised by F.V. against the defendant were similar to H.C.'s allegations. Both children were related to the defendant. F.V. was the daughter of the defendant's cousin. The offenses against F.V. and H.C. occurred in the defendant's home. F.V. was 13 years old. F.V. would testify that the defendant had rubbed his penis against her vaginal area. The defendant had also committed acts of domestic violence against his wife in front of F.V. and H.C. The defendant had been drinking alcohol when he committed the alleged offenses against both children.

¶ 15    The State next argued that there were factual similarities regarding C.S. and H.C. C.S. was the defendant's sister-in-law. When C.S. was a child, from 1981 through 1985, the defendant committed acts against her when the defendant would visit C.S.'s family home. C.S. was between the ages of 8 and 12 when the incidents occurred. The defendant touched the vaginal areas of both C.S. and H.C. with his hand or fingers. The defendant would molest C.S. in the evening while she was asleep. At the conclusion of the hearing on this testimony, the circuit court took the defendant's motion *in limine* regarding the acts against B.T., J.M., F.V., and C.S. under advisement.

5

¶ 16    On February 11, 2010, the parties appeared for a pretrial conference. The circuit court addressed the motion *in limine* as to the admission of case People v. Cuttrell, No. 08-CF-319 (Cir. Ct. Saline County, Mar. 23, 2009) regarding B.T. The circuit court found based on the proximity in time and degree of factual similarity that the probative value of the conviction outweighed any undue prejudice to the defendant. The circuit court denied the defendant's motion to keep this evidence out of the trial.

¶ 17    The circuit court then addressed the motion *in limine* regarding the testimony of J.M., F.V., and C.S. The circuit court stated that it considered the legislative intent of section 115-7.3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3 (West 2008)), arguments by counsel, and the case of *People v. Donoho*, 204 Ill. 2d 159 (2003). The circuit court found that the probative value of the proposed testimony of J.M., F.V., and C.S. outweighed the undue prejudice to the defendant, and thus favored the admissibility of the evidence. The defendant's motion *in limine* to exclude other-crimes evidence was denied.

¶ 18    The defendant filed a motion to reconsider the motion *in limine* filed on September 3, 2009, regarding the defendant's conviction for predatory criminal sexual assault of a child, B.T. The defendant argued that those crimes occurred approximately 10 years after the allegations involved in this matter. The defendant requested that the conviction and evidence involving B.T. be prohibited from being introduced into evidence.

¶ 19    The circuit court held a hearing on March 17, 2010, regarding the defendant's motion to reconsider the motion *in limine* involving B.T. The circuit court reconsidered its previous decision and found that the probative value of the conviction involving B.T. did not outweigh the undue prejudice to the defendant. The circuit court reasoned that the defendant's conduct 10 years after an alleged event was not conduct that the legislature intended to be considered. The circuit court

granted the motion to reconsider and evidence of the defendant's conviction involving B.T. was prohibited at trial.

¶ 20    On March 17, 2010, the State filed a motion to dismiss counts 21 through 26 for offenses dated August 1996, September 1996, and October 1996, and counts 43 and 44 for offenses dated September 1997. During those time periods, H.C. resided outside of Saline County's jurisdiction. The defendant did not object to the motion and the circuit court dismissed those counts.

¶ 21    The trial began on March 17, 2010. The parties waived opening statements. Donna Hesterly, a Department of Children and Family Services (DCFS) child protection specialist, testified first for the State. Hesterly testified that she investigated the case involving H.C. and allegations of sexual abuse perpetrated by H.C.'s father, the defendant. In 2003, Hesterly initially became involved with H.C.'s family to investigate allegations of physical abuse to H.C. by the defendant. After Hesterly began her investigation, H.C. disclosed the sexual abuse allegations against the defendant to Joanna Lane, the school guidance counselor. Lane then informed Hesterly of H.C.'s allegations. Hesterly contacted law enforcement to be involved in the investigation. H.C. was taken into protective custody in September of 2003, and she was never returned to her parents. Hesterly testified that the DCFS and police investigations were provided to the state's attorney's office in 2003 and they declined to prosecute the defendant at that time. Hesterly also had contacted the subsequent state's attorney and he also declined to prosecute.

¶ 22    H.C. testified next and stated that she was five years old when she was first sexually abused by the defendant. At that time, H.C. lived in Hamilton County. H.C. described the first incident of abuse. The defendant went into H.C.'s bedroom while she was in bed. The defendant laid down in bed, grabbed H.C.'s hand, put her hand down his pants, and made her touch his penis.

7

¶ 23    H.C. testified that the defendant sexually abused H.C. a second time when she was seven. After that incident, the defendant continued to inappropriately touch her multiple times a week until she was 12 years old. H.C. explained that the defendant would come into her bedroom when she was sleeping. The defendant would take H.C. into the living room to sit with the defendant. H.C. would sit beside the defendant on the living room couch while the lights and television set were on. The defendant would grab H.C.'s hand and place it on his penis. The defendant would sometimes make H.C. move her hand "a little bit." H.C. believed that the defendant had an erection when he made H.C. touch him. H.C. also testified that the defendant touched her vagina with his hand. The defendant never penetrated her vagina.

¶ 24    H.C.'s family did not witness the acts of the defendant. H.C. testified that the defendant would inappropriately touch her when H.C.'s brothers were asleep and her mother was at work. H.C.'s mother worked evening shifts at a nursing home. The defendant always brought H.C. into the living room at night and kept the television on.

¶ 25    H.C. testified that when she was younger, she did not understand that the defendant's actions were wrong. When H.C. reached the age of 12, she learned through classes at school that the defendant's behavior was inappropriate. H.C. told the defendant that she was not going to allow the defendant's behavior to continue. The defendant stopped touching H.C. after the confrontation. He threatened that "it would get worse" if H.C. told anyone. H.C. testified that she did not know if the defendant was referring to something sexual or if the defendant threatened violence. H.C. also testified that the defendant consumed alcohol every time he would inappropriately touch her.

¶ 26    H.C. informed Joanna Lane, the high school guidance counselor, about the abuse in 2003, when H.C. was 15 years old. DCFS subsequently removed H.C. from her parents' care and the defendant's parental rights were terminated when H.C. was 16 years.

¶ 27    J.M. testified after H.C. J.M. described two incidents that had occurred when the defendant had inappropriately touched her. After J.M. began her testimony, the defendant objected to J.M.'s testimony based on the same reasons as those set forth in his motion *in limine*. The circuit court overruled the objection. J.M., born on February 9, 1989, testified to an incident that occurred at the defendant's house when she was 12 years old. J.M. testified that she was sitting on the couch next to the defendant when everyone else in the house was asleep. The defendant put his arm around J.M. and moved his hand towards her breast. J.M. pushed the defendant away. She told the defendant that she wanted to lie down. J.M. then laid down on the couch and faced the back of the couch. The defendant laid down next to J.M. and started to rub her breasts. Then, the defendant pulled her hand towards his genitals, and he put her hand on his pants on his penis. J.M. testified that the defendant's penis was erect. J.M. then pulled her hand away, got up, went to the bathroom, and cried. J.M. stated that the defendant apologized and that he was "stoned from earlier." J.M. testified that the defendant was "a little drunk."

¶ 28    On cross-examination, J.M. was questioned about a statement she made to Trooper Zimmerman on March 17, 2004, about the event that occurred in 2001. J.M. agreed that she told the officer that the defendant had attempted to touch her breasts, but she did not allow it. J.M. had also told the officer that the defendant wanted to cuddle with her on the couch. J.M. was questioned on a portion of the police report that stated, "[J.M.] related [the defendant] grabbed her hand and attempted to place it on his penis several times, however, she never touched him." J.M. testified that the summary provided in the police report was incorrect. J.M. testified that she "told the officer that he was trying to touch my breasts, and then he put my hand down towards his penis, and I did touch his penis, and I remember describing how it felt to the officer when I touched his penis." J.M. further testified that the defendant put his hand on her breast after she laid down on the couch.

9

¶ 29    The State questioned J.M. regarding a report created by DCFS on February 18, 2004. J.M. read the DCFS report, which stated:

> "[J.M.] said she was sleeping in the living room. [The defendant] got up and came into the living room and laid down on the couch beside her. She said that he took her hand and put it on his private, penis area. She said that he had—he had on shorts. She said that when he took her hand and rubbed it up and down on his pants or shorts in his private area, she said that when he did that she could feel his private and it was hard and big. She tried to get away from him, and he tried to stop her. He put his hand on her breasts and rubbed them over the clothes."

J.M. testified that the information as stated in the DCFS report reflected the information that she had told Donna Hesterly, the DCFS worker. J.M. further testified that the information described in the police report was not accurate. The defendant offered the DCFS and the police reports as evidence and the State made a hearsay objection. The circuit court sustained the objection, and the reports were not admitted into evidence.

¶ 30    J.M. additionally testified to an incident that occurred when she was 13 or 14 years old. J.M. was at the defendant's house with H.C. and F.V. F.V. was 12 or 13 at that time. The defendant made H.C. go to her bedroom. J.M. and F.V. were left in the living room with the defendant. The defendant attempted to dance with the girls and F.V. attempted to leave the house. The defendant stopped her from leaving and sat her down on the couch. The defendant was holding F.V., pushed against her, and tried to kiss her. J.M. then told the defendant to leave F.V. alone. The defendant then attempted to kiss J.M. but she moved away. The defendant told J.M. "that if I didn't let him kiss him [*sic*], that it would make him look like an idiot."

¶ 31    F.V. testified and the defendant objected to F.V.'s testimony for the reasons as indicated in the motion *in limine*. The circuit court overruled the defendant's objection. F.V. had visited H.C. at the defendant's home approximately three times. F.V. testified that J.M. and F.V. visited H.C. at H.C.'s home in August of 2003. During the visit, the defendant was yelling at his wife. The

10

defendant then yelled at F.V. and told her to go home. F.V. started to leave and the defendant shut the door. The defendant told F.V. that she could not leave and then he hugged F.V. They sat on the couch together and the defendant put F.V. between his legs and rubbed his private area on her vaginal area. He also kissed her. F.V. told the defendant that she "didn't like the way he was touching [her]." Then, F.V. started crying and J.M. yelled at the defendant to leave her alone. Then, the defendant's wife yelled at the defendant from her bedroom to leave them alone. His wife had cancer and had trouble moving. The defendant had been drinking that night. F.V. did not return to the defendant's home after that night because she was afraid of the defendant. F.V. told her mother what had happened, and her mother told F.V. to stay away from them.

¶ 32    C.S., the defendant's sister-in-law, testified to the sexual abuse that occurred when she was a child. The defendant was friends with C.S.'s older brother and their families would spend time together. C.S. testified to an incident that occurred when she was eight, where the defendant had exposed himself to C.S., without touching her. C.S. testified that additional incidents occurred when she was between the ages of 8 and 12. C.S. described an incident which occurred while the defendant was visiting her home. While C.S. was asleep the defendant had touched her mouth with something. C.S. was not certain whether the defendant had touched her with his hand. When she woke, she saw the defendant was standing next to her, exposed, and masturbating. C.S. testified to two more incidents where she woke up to the defendant's hands down her pants and he was touching her vaginal area. The defendant did not inappropriately touch her after she was 12.

¶ 33    H.C.'s high school guidance counselor, Joanna Lane, also testified. In 2003, H.C. had reported sexual abuse to Lane. Lane, as a mandated reporter, contacted DCFS.

¶ 34    Two of H.C.'s schoolteachers and an employee from the water department testified to the time frame where H.C. and the defendant were residents in Saline County. After testimony was

11

presented about H.C.'s ties to Saline County, the State rested. The defendant raised a motion for a judgment of acquittal. The defense argued that the evidence presented was insufficient to prove the defendant guilty beyond a reasonable doubt. The circuit court denied the defendant's motion.

¶ 35    The defense called Mark Zimmerman, a sergeant with the Illinois State Police, to testify. Zimmerman testified that he interviewed J.M. and Hesterly with DCFS present during the interview. Zimmerman testified that he had created a summary of his interview in a report dated March 17, 2004. J.M. had told Zimmerman that the defendant had attempted to touch her breasts and J.M. did not allow him to do so. Then the defendant wanted to cuddle with J.M. The defendant grabbed J.M.'s hand and tried to place it on his penis multiple times. J.M. reported that she never touched the defendant. The defendant later apologized to J.M., told her he was drunk, and he remained in his room for the rest of the evening. Zimmerman's report was entered into evidence.

¶ 36    The defendant's sister, Kimberla Clark, also testified on behalf of the defendant. Kimberla testified that she had a conversation with H.C. in 2003 where H.C. said that she tried to tell DCFS that the defendant did not do anything and DCFS did not believe her. Kimberla testified that she did not contact DCFS after she spoke to H.C. about her claim that DCFS would not believe H.C. Kimberla did not contact the state police about H.C.'s statements.

¶ 37    Kimberla additionally testified that C.S. spoke to her about the allegations made against the defendant. C.S. said that the only time the defendant had touched her was in 1981.[2] Kimberla testified that C.S. was pregnant at that time. According to Kimberla, the defendant stroked C.S.'s head when she was asleep and covered with a blanket because he mistook C.S. for their dog. Kimberla testified that the incident became a family joke.

_____

[2]In 1981, C.S. was eight years old.

¶ 38    The defendant's brother, Randy Cuttrell, testified. Randy was married to C.S. but they were separated at the time of the trial. In 1997, the defendant and his family lived with Randy in Tennessee. Randy was not aware of any issues with the defendant and H.C. Randy testified that he questioned H.C. about her accusations against the defendant. H.C. told Randy that the allegations never happened. Randy testified that H.C. was dating an 18-year-old when she was a minor. H.C. had disappeared for three days to be with her 18-year-old boyfriend in 2001 or 2002. Randy testified that DCFS was contacted to have H.C. removed from her home because of her behavior. Randy was aware of the allegations of sexual abuse by the defendant towards F.V., J.M., and C.S., but he did not believe that the allegations were true.

¶ 39    J.C., the defendant's son and H.C.'s brother, testified. J.C. testified that the defendant used to drink on a regular basis. J.C. never observed the defendant behaving inappropriately towards H.C. His mother worked night shifts, most of the time, in nursing homes. The defendant was frequently unemployed, and he would watch the children at night while his wife worked. When J.C. was between the ages of 14 and 17, he would fight with the defendant to stop the defendant from abusing his mother when she was suffering from cancer. J.C. testified that his family moved frequently but for most of his childhood they lived in and around Eldorado in Saline County.

¶ 40    D.C., the defendant's son and H.C.'s brother, testified. D.C. testified to the sleeping arrangements when he was a child and that they lived with their grandmother. H.C. shared a bedroom with their grandmother. Their grandmother was a light sleeper and if the defendant had done something to H.C., their grandmother would have heard. D.C. did not remember moving into a different mobile home next to his grandmother. D.C. additionally testified that the defendant would argue with their mother when he drank and the defendant hit J.C. before, but he did not hit H.C.

13

¶ 41    The defendant testified and denied all of the allegations of touching his daughter. The defendant testified that they lived in Tennessee and in Hamilton County, Illinois, before moving to Saline County, Illinois. During the time frame of November of 1997 to August of 1998, his wife worked shifts from 2 p.m. to 10 p.m. or from 10 p.m. to 6 a.m.

¶ 42    The defendant denied inappropriately touching C.S. He testified that he had only visited his friend on one occasion, and he stayed up all night drinking. C.S.'s oldest brother used to date the defendant's sister. The defendant would "tag-a-long" with his sister when she dated C.S.'s older brother.

¶ 43    The defendant testified that F.V. was his cousin's daughter. F.V. and J.M. were friends of H.C. The defendant claimed that F.V. and J.M. lied during their testimony. He did not know why they would lie. When questioned about the children's motive to lie, the defendant stated, "for all these years no one even bothered with it or said anything about it. It didn't start until after [the State] started calling them up and asking things about it. *** That was her motivation to get motivated to do it again." Then the defendant stated, "everything was just laid dormant. It was as it was." The defendant additionally admitted to being convicted of predatory criminal sexual assault of a child.

¶ 44    H.C. testified as a rebuttal witness regarding her aunt Kimberla's testimony. H.C. testified that she never lied about the defendant sexually abusing her. H.C. had never informed Kimberla that DCFS would not listen to her. H.C. additionally testified that she never reported to anyone that the sexual abuse by the defendant had not occurred.

¶ 45    Officer Dunn also testified as a rebuttal witness. Dunn interviewed H.C. on November 25, 2003. Dunn observed that during H.C.'s interview, H.C. was "very upset" about what had

14

happened in the past. Dunn believed H.C. to be "truthful and credible." H.C.'s behavior was consistent with someone who had experienced trauma.

¶ 46    Donna Hesterly with DCFS testified that when she interviewed H.C., H.C.'s emotions were consistent with someone who had been traumatized. Hesterly was present when H.C. was interviewed by Trooper Mark Zimmerman. H.C. initially told Hesterly that the abuse occurred four or five times. Hesterly described H.C. as "very upset, crying, distraught" when she first spoke of the abuse. Hesterly did not press her for more information at that time. H.C. later confided that the abuse was more frequent. Through further discussions with H.C., Hesterly determined that the abuse occurred a couple times a week from the age of 7 to 12, as well as the additional incident that occurred when H.C. was 5 years old.

¶ 47    Closing arguments were not included in the record. The circuit court found the defendant guilty beyond a reasonable doubt as to counts 27 through 42, 16 of the 60 counts that were originally charged. A judgment of acquittal was entered as to the remaining counts on the amended information.

¶ 48    On April 13, 2010, the defendant filed a motion for a new trial. The motion for a new trial included claims that the circuit court erred by denying the defendant's motions *in limine* allowing testimony of J.M., F.V., and C.S. The defendant argued that the introduction of a prior felony conviction for predatory criminal sexual assault of a child was prejudicial. The circuit court denied the motion.

¶ 49    The circuit court sentenced the defendant to five years in the Illinois Department of Corrections for each of the 16 counts where the defendant was found guilty. The circuit court ordered the defendant to serve the five-year sentences consecutively to each other and

15

consecutively to the defendant's sentence in People v. Cuttrell, No. 08-CF-319 (Cir. Ct. Saline County).

¶ 50    The defense filed a motion to reconsider the sentence on May 28, 2010. On June 16, 2010, the defense filed an additional motion for a new trial and a motion for transcripts. The defendant requested a transcript of C.S.'s testimony and the transcript of the closing argument. The defendant filed several subsequent motions for transcripts.

¶ 51    On May 3, 2012, the defendant filed a letter with the court. The motion to reconsider and additional motion for a new trial had not been heard. The defendant had not received transcripts. The defendant filed subsequent complaints that his attorney was ineffective. The circuit court appointed an attorney to represent the defendant on his motion for ineffective assistance of counsel. The defendant's *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181 (1984)) and motion to reconsider his sentence were pending for several years due to conflicts of interest with appointed counsel and issues with obtaining trial transcripts. On July 9, 2020, the parties reached an agreement where the defendant agreed to forego his claim of ineffective assistance of counsel and the State agreed that the defendant's sentences should run concurrent with each other.

¶ 52    An amended judgment was entered on July 21, 2020. The defendant was found guilty of 16 counts of aggravated criminal sexual abuse and the defendant was sentenced to five years for each count, to run concurrently. The circuit court further ordered that the sentences imposed would run consecutive to the sentence imposed in People v. Cuttrell, No. 08-CF-319 (Cir. Ct. Saline County).

¶ 53    On February 11, 2021, the defendant filed a *pro se* motion to set pending motions for hearing. The defendant subsequently filed a *pro se* notice of appeal on August 26, 2021, and appellate counsel was appointed. On November 29, 2021, appellate counsel filed a motion for

leave to file late notice of appeal and argued that the defendant's May 28, 2010, motion to reconsider the sentence was never heard; however, the parties entered into an agreed order that resulted in an amended judgment of sentence. The defendant asserted that he never agreed to withdraw his motion for ineffective assistance of counsel and was not present for the hearing. The defendant was not served with a copy of the agreed order and the amended judgment of sentence. The defendant argued that his February 11, 2021, motion should have been construed as a motion for leave to file a late notice of appeal under Illinois Supreme Court Rule 606(c) (eff. July 1, 2017). This court granted leave to file a late notice of appeal on December 2, 2021.

¶ 54                                    II. ANALYSIS

¶ 55    On appeal, the defendant argues that the circuit court abused its discretion by allowing evidence of alleged other-crimes evidence through the testimony of C.S. and F.V. The defendant does not contest the other-crimes testimony by J.M. The State argues that the circuit court did not abuse its discretion by allowing this evidence, and even if the testimony of the two witnesses was considered error, it was harmless error.

¶ 56    In general, evidence of other crimes for the purpose of demonstrating the propensity of the defendant to commit the charged crime is inadmissible. *People v. Manning*, 182 Ill. 2d 193, 213 (1998). Section 115-7.3 of the Code of Criminal Procedure of 1963 (Code) provides an exception for the evidentiary use of the defendant's prior convictions in sexual offense cases, including the crime of aggravated criminal sexual abuse. 725 ILCS 5/115-7.3 (West 2008). Section 115-7.3 of the Code specifies that the following factors should be weighed in determining whether the prejudicial effect of admitting other-crimes evidence outweighs the probative value:

"(1) the proximity in time to the charged or predicate offense;

(2) the degree of factual similarity to the charged or predicate offense; or

17

(3) other relevant facts and circumstances." 725 ILCS 5/115-7.3(c) (West 2008).

¶ 57    The circuit court's decision to admit evidence of the defendant's prior offenses is reviewed for an abuse of discretion. *People v. Donoho*, 204 Ill. 2d 159, 182 (2003). An abuse of discretion will be found only where the circuit court's decision is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the circuit court. *Donoho*, 204 Ill. 2d at 182.

¶ 58    There is no bright-line rule regarding the proximity in time between the prior offense and the crime charged. *Donoho*, 204 Ill. 2d at 184. Courts should consider the issue of proximity in time on a case-by-case basis and the reviewing court may not substitute its judgment for that of the circuit court. *People v. Braddy*, 2015 IL App (5th) 130354, ¶ 32. In *Donoho*, the other crime occurred 12 to 15 years prior to the conduct at issue in that case. *Donoho*, 204 Ill. 2d at 184. Our supreme court in *Donoho* considered that the appellate court in *People v. Davis*, 260 Ill. App. 3d 176, 192 (1994), affirmed the admission of other-crimes evidence over 20 years old to be "sufficiently credible and probative." *Donoho*, 204 Ill. 2d at 184.

¶ 59    In this case, H.C. alleged that the defendant committed sexual acts in 1993, when H.C. was 5 years old, then again when she was 7, and the defendant continued until H.C. was 12 years old. The allegations charged against the defendant spanned from August of 1995 through May of 1998.

¶ 60    C.S. testified that the defendant first abused her in 1981 when she was eight years old. The abuse continued until 1985. Ten years passed between the defendant's last incident with C.S. until the first charged incident involving H.C. The defendant did not dispute the time frame regarding the incidents involving F.V. The testimony by C.S. and F.V. should not be excluded based on the proximity of time of their allegations.

¶ 61    We next consider "the degree of factual similarity to the charged or predicate offense." 725 ILCS 5/115-7.3(c)(2) (West 2008). Evidence of other crimes must have "some threshold similarity

18

to the crime charged." (Internal quotation marks omitted.) *People v. Braddy*, 2015 IL App (5th) 130354, ¶ 39. Some factual differences will not defeat admissibility. *Braddy*, 2015 IL App (5th) 130354, ¶ 39. General areas of similarities are sufficient to support admissibility. *Donoho*, 204 Ill. 2d at 184. Where the defendant does not have continued access to the victims, the progression of abuse may be different. *Braddy*, 2015 IL App (5th) 130354, ¶ 41.

¶ 62    The defendant's behavior towards each of the victims was not identical; however, there were general similarities. H.C. was between the ages of 5 and 12 when the sexual abuse occurred. The majority of the abuse occurred after H.C. turned seven years old. The abuse stopped because H.C. confronted the defendant. H.C. testified that the sexual abuse took place in her home at night when her brothers were asleep and her mother was at work. The defendant would take her into the living room and would keep the television on. The defendant would touch H.C.'s vaginal area, and there was never penetration. The defendant would also have H.C. touch his erect penis. The defendant would commit these sexual acts while he was under the influence of alcohol.

¶ 63    The allegations of sexual abuse regarding C.S. occurred when C.S. was between the ages of 8 and 12. C.S. was a similar age to H.C. when the abuse occurred. The touching of C.S.'s vaginal area occurred at night after C.S. went to bed. He would touch C.S., without penetration, while he was intoxicated. The allegations were not identical. The defendant himself was much younger at that time and did not have the same continued access to C.S. in his own home as he did with H.C. The defendant's behavior towards C.S., however, had general similarities to his behavior towards H.C.

¶ 64    The other-crime evidence regarding F.V. also had general similarities to the defendant's behavior towards H.C. We note that F.V. testified that she had been to the defendant's home approximately three times. The defendant did not have continued access to F.V. as he did with

19

H.C. F.V. was 13 when the defendant pulled her onto the couch in the living room to sit with him. F.V. was a year older than H.C.; however, the defendant stopped touching H.C. because she had confronted him. It is reasonable to consider that F.V., at 13, was similar in age to H.C. at the time of the abuse. F.V. testified that the defendant placed F.V. between his legs and rubbed his private area on her vaginal area and kissed her. The defendant had been drinking. He had touched the private area of a young female and made her touch him, at night, in his living room.

¶ 65    The State argues that if there was any error in admitting the testimony of C.S. and F.V. then the error was harmless. The test for harmless error is whether it appears beyond a reasonable doubt that the error at issue did not contribute to the circuit court's decision at trial. *In re Brandon P.*, 2014 IL 116653, ¶ 50. A reviewing court, when determining whether an error is harmless, may "(1) focus on the error to determine whether it might have contributed to the conviction; (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction; or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence." (Internal quotation marks omitted.) *In re Brandon P.*, 2014 IL 116653, ¶ 50.

¶ 66    The defendant did not raise issue with the probative value of the other-crimes evidence regarding J.M.'s testimony. J.M. testified to two events. When J.M. was 12 years old, the defendant attempted to touch J.M.'s breast while she was sitting on the defendant's living room couch at night while others were sleeping. After J.M. laid down on the couch, the defendant cuddled her, rubbed her chest, and grabbed J.M. by the hand to force her to touch his penis. J.M. was also present for and testified to the same incident described by F.V. in her testimony. J.M. testified that the defendant was holding F.V., pushed against her, and tried to kiss her. Although we find that the circuit court did not err in allowing F.V. to testify, we note that F.V.'s testimony was

20

cumulative of J.M.'s testimony. Additionally, J.M.'s testimony alone supported H.C.'s testimony and demonstrated that the defendant had a propensity to take advantage of young girls.

¶ 67    Having reviewed the entire record, we find that the circuit court carefully considered the statutory factors in weighing the probative value of the other-crimes evidence against its potential to cause undue prejudice to the defendant. The circuit court was in the best position to weigh the prejudicial impact of the other-crimes evidence in the context of the entire case. We find no basis to conclude that the circuit court abused its discretion in finding that the testimony of C.S. and F.V. was more probative than prejudicial.

¶ 68                                    III. CONCLUSION

¶ 69    For the foregoing reasons, we affirm the judgment of the circuit court of Saline County.


¶ 70    Affirmed.