Rule 23 order filed
April 17, 2015;
Motion to publish granted
May 20, 2015.

2015 IL App (5th) 130354

NO. 5-13-0354

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| THE PEOPLE OF THE STATE OF ILLNOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Marion County. |
| | ) | |
| v. | ) | No. 11-CF-334 |
| | ) | |
| KYLE C. BRADDY, | ) | Honorable |
| | ) | Michael D. McHaney, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Presiding Justice Cates and Justice Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant seeks a new trial on the basis that the trial court improperly granted the State's motion allowing evidence of uncharged sexual assaults allegedly committed by the defendant on his sister 20 years prior to the crimes alleged in this case. He alleges that the State's notice of its intent to introduce this evidence was inadequate because it did not comply with the relevant statute. Alternatively, he argues that the evidence unduly prejudiced him and should not have been allowed because it was too remote in time and too dissimilar from the charged offenses. We affirm.

1

¶ 2                                    FACTS

¶ 3     The State of Illinois charged the defendant, Kyle C. Braddy, with one count of the offense of criminal sexual assault in violation of section 11-1.20(a)(3) of the Criminal Code of 1961 (Code) (720 ILCS 5/11-1.20(a)(3) (West 2010)) and two counts of aggravated criminal sexual abuse in violation of section 11-1.60(d) of the Code (720 ILCS 5/11-1.60(d) (West 2010)).  The incidents that led to these charges occurred in a two-month period during the summer of 2011.  The defendant lived with Lori McElroy.  Lori was the mother of V.M.  V.M. was 14 years old in July and August 2011.  The defendant's daughter is A.B.  A.B. lived with the defendant, Lori, and V.M.  A.B. was 13 years old during the same two-month period in 2011.  The defendant was 31 years of age during the summer of 2011.

¶ 4     Lori learned that the defendant inappropriately touched her daughter on September 27, 2011.  V.M., who was a freshman at Salem High School, called her mother to pick her up from school and then told her mother that the defendant sexually touched her two times.  The next day, A.B. learned about V.M.'s allegations.  A.B. then told V.M. and Lori that the defendant sexually touched her also.

¶ 5     V.M. testified at the defendant's trial.  The first incident occurred when V.M. and the defendant went to hunt coyotes in late July or early August 2011 during evening hours.  In response to V.M.'s complaint that her back hurt, the defendant offered to rub her back in a camper stored on the hunting property.  V.M. testified that the defendant directed her to lie on her stomach on a bed and take off her shirt.  The defendant unhooked her bra, but V.M. made him refasten it.  The defendant rubbed her back.  The

defendant then asked V.M. to roll over so that he could rub her legs. V.M. testified that she was wearing jeans. Initially the defendant rubbed her legs through her jeans, but then removed V.M.'s jeans. The defendant continued to rub V.M.'s thighs and then placed his hand inside her underwear and rubbed her vagina for a couple of minutes. After this, the defendant placed his mouth on V.M.'s vagina for a couple more minutes. The defendant then ceased this activity. The defendant and V.M. then exited the camper, they sat on the steps to look for coyotes, and shortly later, they left and drove home.

¶ 6    V.M. also testified about a second incident that occurred during daylight hours a few days after the first incident. The defendant and V.M. planned to go coyote hunting again and drove to the hunting ground. V.M. wore shorts on this day. After arriving at the property and still inside the defendant's truck, the defendant began rubbing V.M.'s calves and then reached through the leg hole of V.M.'s shorts, pulling aside her underwear, and touched her vagina. While the defendant was touching her vagina, V.M. was listening to her iPod and drinking an alcoholic beverage provided by the defendant. V.M. testified that she then exited the truck in order to get away from the defendant. She returned to the truck, and they drove home.

¶ 7    A.B. testified that in October 2011 she and the defendant were at home, while Lori and V.M. were gone. The defendant asked A.B. to rub his back–a common request. The defendant offered to rub A.B.'s back, and she accepted the offer. The defendant suggested that A.B. lie down on his bed on her stomach. The defendant rubbed her back under her shirt and then unhooked her bra. The defendant asked A.B. which knee she had previously injured, and then he offered to rub her knee. A.B. testified that she turned

3

onto her back, and the defendant began rubbing her knee. While she was on her iPod, the defendant rubbed on the leg, telling A.B. that he was searching for a pulled ligament. The defendant then put his hand under her underpants and rubbed her vagina "at the top." A.B. testified that the defendant stopped touching her after a few minutes, telling her that he thought his friend was coming over to the house.

¶ 8    Before the start of the second day of trial, the State advised the court of its intent to call the defendant's sister, Kara Braddy, pursuant to section 115-7.3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3 (West 2010)).

"The State: Your Honor, in thinking about this last night, it occurred to me that it would probably be cleaner to go ahead and bring this up now to avoid a–what could be a lengthy sidebar and make the jury sit. One of the witnesses I intend to call is Kara Braddy. I think the Court's already heard testimony that Kara is the defendant's sister. Kara has indicated, in an intent to elicit testimony from her, that when she was a child, approximately eight, nine years old, the defendant would have been 11, 12 years old, that he engaged in similar sexual acts with her.

I'm offering this evidence under 725 ILCS 5/115-7.3 ***. This testimony would clearly qualify as criminal sexual abuse or criminal sexual assault. All it requires is that the witness be disclosed and the substance of any statements, if any, be disclosed.

I would point out that on April 30th of 2012, over a year ago, we filed our specific answer listing Kara as a witness, and copied the entire DCFS investigative

4

file which includes a little over a page summary by Susan Coggin-Harris of a phone conversation she had with Kara Braddy after these allegations came out. *** Frankly, I've been anticipating a defense motion *in limine* regarding this, but haven't seen one, so I thought it relevant to–or appropriate to bring it up outside the presence of the jury now instead of just asking it on the stand and then side barring it.

What I believe she's going to testify to is that over a year's span, she estimates 20 to 30 incidents that started with fondling that eventually progressed to actual penetration, including anal penetration on one occasion she can recall. ***

It's factually similar in that it shows a propensity of this defendant to be opportunistic with female members of his family. I believe it is admissible, but I thought we better address it before she actually gets on the stand and I start asking her about it.

The Court: Defense?

The Defense: Your Honor, I am taken by surprise.

The Court: How? He just said he disclosed it over a year ago.

The Defense: Well, if it's in here I've not seen it.

The State: That was in the DCFS records attached April 30th of 2012.

The Defense: There is one paragraph, Your Honor, I think the Court needs to see that one paragraph. It nowhere goes into any type of a detail that's been alleged by [the State]. We think it is totally not relevant given the time that has elapsed between [defendant] being 12 and the charges here occurring in 2011. We

5

think that it would just be highly prejudicial, unfair, create undue bias towards [defendant] based on some act of misconduct that took place when he was a child as opposed to allegations of wrongdoing now in his adult years. ***

Again, similar situation, [the State] is exactly right, similar situation, in that is Kara's word versus [defendant's] word. The same thing we have here ***. With nothing else to support Kara's allegations that occurred so many years ago, we just think it would just be unduly prejudicial, totally biased. It would totally deprive [defendant] of his right to a fair trial to now have him be required to have this trial within the trial.

* * *

The State: *** And, as far as his argument that every single detail wasn't disclosed, the discovery request which was right in line with the supreme court rules asked for a list of witnesses, I provided that and Kara was listed. As for any verbatim statements, which she didn't give in writing or any memorandum, this clearly would be a memorandum summarizing all the statements, and that's all there is, his own clients' sister. If he wanted to get every detail of her testimony he could have interviewed her. ***

The Court: Are the allegations regarding Kara similar to what's charged here?

The State: To start. It progressed farther than the allegations in this case.

The Court: Two paragraphs below *** state [*sic*] great detail *** Kara stated Kyle would force himself upon her.  Said he would have sexual intercourse and anal with her.  Now how much more detail can you get, right?  ***

* * *

The Court: All right.  I've considered the statute, considered proximity and time, degree of factual similarity and other relevant facts and  circumstances.  The State has complied with Subparagraph d.  The legislature created this statute.  Obviously it's prejudicial, the legislature knew that when it created the statute.  I've weighed the factors, and in the exercise of the Court's discretion, I'm finding the probative value outweighs the prejudicial effect and this evidence is coming in under the statute."

¶ 9    Kara Braddy testified that the defendant is her older brother.  The sexual encounters began when Kara was 8 and her 11-year-old brother showed her explicit pictures and had Kara pose in the manner that the women in the pictures did.  After she posed, the defendant would touch her vagina and her anus.  Kara testified that the touching incidents progressed to intercourse over a 9- to 12-month period.  She specifically testified that the defendant penetrated her vaginally and anally with his penis and other objects, including a rubber hose.  The sexual contacts occurred 20 to 30 times.

¶ 10    The defendant testified at trial and denied all allegations by his sister and the two victims in this case, V.M. and A.B.  The defendant did not deny that he took V.M. coyote hunting, but disputed many details of V.M.'s testimony regarding any sexual contact.

7

¶ 11    Lori McElroy testified that she did not believe that the defendant inappropriately touched her daughter, V.M., or the defendant's daughter, A.B. She could not articulate why she disbelieved their stories.

¶ 12    An acquaintance of the defendant, George Sloat, testified he had never heard anything negative about the defendant's character of morality and chastity.

¶ 13    The State called Kara Braddy in rebuttal, who testified that she had conversed with A.B. about the allegations. After that conversation, Kara decided to come forward and contacted the Illinois Department of Children and Family Services (DCFS).

¶ 14    LaDonna Richard of the Amy Center, a resource center for child sexual abuse victims, testified that she videotaped her interviews with V.M. and A.B. about the allegations. She played the videos for the jury.

¶ 15    The jury returned guilty verdicts against the defendant on all three counts. The court sentenced the defendant to 10 years on the sexual assault count and 5 years on each of the two sexual abuse counts. The defendant must serve the two 5-year sentences concurrently, but consecutive to the 10-year sentence. The defendant appeals the convictions and sentences.

¶ 16                         LAW AND ANALYSIS

¶ 17    On appeal, the defendant argues that the State provided inadequate notice of its intent to present the other-crimes evidence. In essence, the defendant argues that evidence of other crimes cannot be introduced at trial unless it has been formally designated as a section 115-7.3 disclosure. 725 ILCS 5/115-7.3 (West 2010). The defendant further argues that introduction of the other-crimes evidence was improper in

8

that it was too remote in time and not factually similar to the allegations in this case. He claims that as a result of the introduction of the other-crimes evidence, he was unduly prejudiced.

¶ 18                                    Adequate Notice

¶ 19    We initially determine whether the State's disclosure was adequate under section 115-7.3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3 (West 2010)) to put the defendant on notice that it intended to offer other-crimes evidence.

¶ 20    Section 115-7.3(d) states in pertinent part:

> "(d) In a criminal case in which the prosecution intends to offer evidence under this Section, it must disclose the evidence, including statements of witnesses or a summary of the substance of any testimony, at a reasonable time in advance of trial, or during trial if the court excuses pretrial notice on good cause shown." 725 ILCS 5/115-7.3(d) (West 2010).

¶ 21    The State provided responses to the defendant's written Illinois Supreme Court Rule 412 (eff. Mar. 1, 2001) discovery requests approximately one year prior to trial. The request and disclosed materials and information relevant to our inquiry are:

> "[Question] 1. The names and last known addresses of persons whom the State intends to call as witnesses.
>
> [Response] 1. The People intend to call any and all witnesses named in any and all police reports, any and all hearings, or informal discovery already disclosed including but not limited to:

                                         * * *
                                          9

k. Kara Braddy, 2035 Celebration Circle, Belleville, IL 62220.

[Question] 2. Any relevant written or recorded statements of persons whom the State intends to call as witnesses.

[Response] 2. Already provided in informal discovery, except for the completed DCFS investigative report, which is attached.

[Question] 3. Any memoranda containing substantially verbatim reports of a witness' oral statement.

[Response] 3. Already provided in informal discovery or included in response to #2."

¶ 22 The attached DCFS investigative report included a summary by a DCFS investigator, Susan Coggin-Harris, of her interview with Kara Braddy, regarding sexual abuse allegations Kara made against her brother, the defendant. Kara told Susan that when they were growing up, her brother sexually fondled her and forced her to have vaginal and anal intercourse with him on multiple occasions. The summary goes into some detail about the allegations, including the ages of Kara and her brother when the incidents occurred. Kara told Susan that she eventually informed her mother about what her brother was doing to her but that her mother said she did not believe her and took no action. Kara also told Susan that in a recent conversation with her mother, her mother made the statement that she hoped that Kara would not bring up these old allegations.

¶ 23 Clearly the defendant's counsel was given timely notice that the State intended to call the defendant's sister, Kara Braddy, to testify about past sexual abuse involving the defendant. The nature and substance of the testimony was evident from the DCFS

10

summary disclosed over a year before trial. This fact belies defense counsel's statements that he was "taken by surprise" and had not seen the disclosure. In light of this statement, counsel's later explanation that "I was aware of this, given the details of it, I wasn't concerned that it would be brought up" is confounding. Remarkably, defense counsel did not file a motion *in limine* to attempt to keep any of this information out of evidence.

¶ 24 We reject outright the defendant's claim that the notice was not adequate merely because the written disclosure did not cite to section 115-7.3. We find nothing in the statutory language that requires this designation. In sum, we find that the prosecution's disclosure of its intent to seek admission of other-crimes evidence met the requirements of section 115-7.3(d) in that the evidence was timely and adequately disclosed.

¶ 25 Whether Admission of Other-Crimes Evidence Was an Abuse of Discretion

¶ 26 Other-crimes evidence is generally not admissible to show the defendant's propensity to commit a charged offense. *People v. Donoho*, 204 Ill. 2d 159, 170, 788 N.E.2d 707, 714 (2003). However, section 115-7.3 of the Code of Criminal Procedure of 1963 permits the admission of other-crimes evidence to show propensity to commit specified sex offenses. 725 ILCS 5/115-7.3(a) (West 2010). Our Illinois Supreme Court has upheld the constitutionality of section 115-7.3. *Donoho*, 204 Ill. 2d at 182, 788 N.E.2d at 721.

¶ 27 We review the trial court's admission of other-crimes evidence under an abuse of discretion standard and will not reverse unless the trial court's decision is " ' "arbitrary, fanciful or unreasonable" ' or ' "where no reasonable man would take the view adopted by the trial court." ' " *Id*. (quoting *People v. M.D.*, 101 Ill. 2d 73, 90, 461 N.E.2d 367, 375

11

(1984) (Simon, J., dissenting), quoting *Peek v. United States*, 321 F.2d 934, 942 (9th Cir. 1963)).

¶ 28    The defendant was charged with criminal sexual assault and aggravated criminal sexual abuse; both are listed as applicable offenses under section 115-7.3.  725 ILCS 5/115-7.3(a) (West 2010).

¶ 29    Section 115-7.3 specifies the factors the court must consider when weighing whether the prejudicial effect of admitting other-crimes evidence outweighs the probative value:

> "(1) the proximity in time to the charged or predicate offense;
>
> (2) the degree of factual similarity to the charged or predicate offense; or
>
> (3) other relevant facts and circumstances."  725 ILCS 5/115-7.3(c) (West 2010).

¶ 30                              Remoteness and Similarity

¶ 31    The defendant argues that the evidence admitted here was not probative of his propensity to commit the charged offenses because the alleged sexual assaults on his sister Kara were too remote in time and too dissimilar to the charged offenses.

¶ 32    There is no bright-line rule controlling when prior offenses are too old to be admitted under section 115-7.3  *Donoho*, 204 Ill. 2d at 183-84, 788 N.E.2d at 722.  The decision must be made on a case-by-case basis and the reviewing court may not simply substitute its judgment for that of the trial court.  *People v. Illgen*, 145 Ill. 2d 353, 370-71, 583 N.E.2d 515, 522 (1991).  While passage of time may lessen the probative value of

12

the other-crimes evidence, that fact alone does not determine its admission. *Id.* at 371, 583 N.E.2d at 522-23; *Donoho*, 204 Ill. 2d at 186, 788 N.E.2d at 723-24.

¶ 33 According to the testimony of the defendant's sister Kara, the sexual assaults that the defendant committed on her occurred approximately 20 years prior to the conduct at issue here.

¶ 34 Our Illinois Supreme Court has found other-crimes evidence admissible after a 12- to 15-year time lapse. In *Donoho*, the defendant was tried for criminal sexual assault and aggravated criminal sexual abuse involving his two young stepchildren, occurring between 1995 and 1998. *Donoho*, 204 Ill. 2d at 162, 788 N.E.2d at 710. The trial court allowed evidence of the defendant's 1983 conviction for indecent liberties with two other young children. *Id.* at 162-63, 788 N.E.2d at 710. The appellate court concluded that the trial court abused its discretion and reversed. *Id.* at 168, 788 N.E.2d at 713. In reinstating the trial court verdict, the Illinois Supreme Court found that the admission of other-crimes evidence was not an abuse of discretion as it was not "arbitrary, fanciful or unreasonable." (Internal quotation marks omitted.) *Id.* at 186, 788 N.E.2d at 723.

¶ 35 In *People v. Davis*, 260 Ill. App. 3d 176, 631 N.E.2d 392 (1994), the appellate court affirmed the trial court's admission of 20-year-old other-crimes evidence, finding it to be credible and probative. The defendant, a male pastor, was charged with and convicted of child pornography, criminal sexual assault, and aggravated criminal sexual abuse of two minor boys. *Id.* at 178, 631 N.E.2d at 394-95. The trial court allowed in testimony regarding noncriminal sexual conduct with several adult males. *Id.* at 190, 631

N.E.2d at 403. These acts occurred over 20 years prior to the charged offenses. *Id.* at 192, 631 N.E.2d at 404.

¶ 36 The defendant urges us to follow *People v. Smith*, 406 Ill. App. 3d 747, 941 N.E.2d 419 (2010). In *Smith*, the defendant was charged with aggravated sexual abuse of his eight-year-old granddaughter. *Id.* at 748, 941 N.E.2d at 421. The trial court's ruling excluded evidence of uncharged sexual abuse allegedly committed by the defendant on his two sisters and his three daughters, but allowed evidence of abuse of another granddaughter. *Id.* at 753, 941 N.E.2d at 425. The State filed a certificate of substantial impairment appealing the ruling. *Id.* at 750, 941 N.E.2d at 423. The appellate court affirmed, concluding that the other-crimes evidence ranging from 25 to 42 years earlier was too remote, rendering evidence of the prior offenses *per se* prejudicial. *Id.* at 754, 941 N.E.2d at 425-26. The court also found the prejudice compounded by the fact that the prior offenses were uncharged and dissimilar. *Id.* The court, however, upheld the trial court's admission of the defendant's alleged uncharged sexual abuse of another granddaughter occurring five years prior, noting the short time lapse and the factual similarities. *Id.* The court stated that the trial court was rightly concerned about the sheer volume of other-crimes evidence leading to a conviction based on prior bad acts alone. *Id.* at 755, 941 N.E.2d at 426. The court remarked however, that the State was still left with "an ample basis to argue propensity at trial." *Id.*

¶ 37 Here, we do not find the remoteness of the prior alleged sexual abuse alone determinative as to the admissibility of the other-crimes evidence. While a 20-year time

14

lapse is significant, we find that Kara's testimony was sufficiently credible and reliable to be probative.

¶ 38    The defendant further argues that the alleged abuse of Kara was too dissimilar to the charged offenses to be probative.

¶ 39    Other-crimes evidence must have " 'some threshold similarity to the crime charged.' " *Donoho*, 204 Ill. 2d at 184, 788 N.E.2d at 722-23 (quoting *People v. Bartall*, 98 Ill. 2d 294, 310, 456 N.E.2d 59, 67 (1983)).  Some factual differences do not defeat admissibility because crimes are not identical.  *Id.* at 185, 788 N.E.2d at 723 (citing *Illgen*, 145 Ill. 2d at 373, 583 N.E.2d at 523-24).

¶ 40    As the defendant points out, there are factual differences here between the alleged sexual abuse of the defendant's sister Kara and the charged crimes.  We are not convinced that these differences are that significant.  While there was a much greater age difference between the defendant and the victims in the current charges than there was between the defendant and his sister at the time of her alleged abuse, we do not find this age difference of particular relevance.  In both situations, the defendant was opportunistic with children who lived in his household and with whom he had some form of familial relationship.

¶ 41    The defendant also argues that because the alleged prior abuse involved sexual intercourse, unlike the charged offenses, the potential for undue prejudice is greater than the probative value.  It is true that the alleged abuse of the defendant's sister Kara involved sexual intercourse unlike the charged crimes which involved fondling of both A.B. and V.M.'s sexual organs and oral penetration of V.M.  However, the fact that the

15

sexual activity advanced farther with the defendant's sister than with the other victims may have had more to do with opportunity than anything else. In the case of his sister, the abuse was more prolonged. It began with numerous occasions of sexual fondling and progressed almost a year later to sexual intercourse. V.M., on the other hand, told her mother Lori, very shortly after the two incidents occurred, which in turn prompted A.B. to also tell Lori. The defendant's sexual abuse activities ceased with respect to A.B. and V.M. once the abuse became public knowledge. As in *People v. Donoho*, these differences in the progression of the abuse may be seen as a result of the defendant's lack of continued access to the victims. *Donoho*, 204 Ill. 2d at 186, 788 N.E.2d at 723.

¶ 42 We also note that Kara's trial testimony was a succinct summary of the defendant's alleged abuse without undue emphasis on sexual details. Furthermore, we do not find that the DCFS report was quoted or published to the jury, thereby reducing the prejudicial effect. *Id*. at 186, 788 N.E.2d at 723-24.

¶ 43 Having reviewed the hearing held by the trial court, we find that the judge carefully considered the statutory factors in weighing the probative value of the other-crimes evidence against its potential to cause undue prejudice to the defendant. We find no basis to conclude that the court abused its discretion in finding that Kara Braddy's testimony was more probative than prejudicial.

¶ 44                                   CONCLUSION

¶ 45 We affirm the judgment of the circuit court of Marion County.

¶ 46 Affirmed.

2015 IL App (5th) 130354

NO. 5-13-0354

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLNOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Marion County. |
| | ) | |
| v. | ) | No. 11-CF-334 |
| | ) | |
| KYLE C. BRADDY, | ) | Honorable |
| | ) | Michael D. McHaney, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

**Rule 23 Order Filed:**   April 17, 2015
**Motion to Publish Granted:**   May 20, 2015
**Opinion Filed:**   May 20, 2015

_____

**Justices:**   Honorable Melissa A. Chapman, J.

Honorable Judy L. Cates, P.J., and
Honorable Richard P. Goldenhersh, J.,
Concur

_____

**Attorney for Appellant**   Mark Tungate, Tungate Law Office, 400 North Main, P.O. Box 557, Flora, IL 62839

_____

**Attorneys for Appellee**   Hon. Matt Wilzbach, State's Attorney, Marion County Courthouse, P.O. Box 157, Salem, IL 62881; Patrick Delfino, Director, Stephen E. Norris, Deputy Director, Kelly M. Stacey, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, Fifth District Office, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864

_____