NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250292-U

NO. 4-25-0292

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 21, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| JUSTIN ATKINSON, | ) | No. 24CF45 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Jason Chambers, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The appellate court affirmed defendant's conviction for domestic battery, holding that (1) there was no plain error or ineffective assistance of counsel in the admission of evidence and (2) the trial court made a sufficient inquiry into defendant's *pro se* claims of ineffective assistance, and its ultimate determination that defendant's *pro se* claims lacked merit or involved matters of trial strategy was not manifestly erroneous.

¶ 2   Defendant, Justin Atkinson, was charged with domestic battery, subsequent offense (720 ILCS 5/12-3.2(a)(2) (West 2022)). Following a bench trial, the trial court found defendant guilty. Defendant appeals, arguing that the court erred in (1) admitting certain evidence and (2) not appointing new counsel to address his *pro se* claims of ineffective assistance or conducting a full hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). Defendant concedes that he did not raise the evidentiary issues below and asks us to review them for plain error and ineffective assistance of counsel. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On January 11, 2024, the State charged defendant in a one-count indictment with felony domestic battery "in that the defendant knowingly made physical contact of an insulting or provoking nature with Danielle Fiello, a family or household member, by grabbing her neck" (720 ILCS 5/12-3.2(a)(2) (West 2022)). The State alleged that defendant had a prior conviction for domestic battery. At defendant's arraignment, the trial court appointed a public defender to represent defendant.

¶ 5        The day before trial, the State filed a motion to admit evidence of the commission of other offenses of domestic violence pursuant to section 115-7.4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.4 (West 2024)), specifically (1) defendant's conviction for domestic battery in McLean County case No. 23-CF-324, which was based on an incident involving defendant's ex-girlfriend, Amy Surrat, that occurred on March 31, 2023, and (2) defendant's conviction for unlawful restraint in McLean County case No. 21-CF-1293, on November 19, 2021, which involved defendant's girlfriend at the time, Melina Aguilar. On the day of trial, the State withdrew the motion.

¶ 6                                         A. Trial

¶ 7        At trial, Danielle Fiello testified that she had been in a relationship with defendant for less than a year. Fiello testified that she called the police on the afternoon of November 15, 2023, to obtain an order of protection after her daughter "got home from school and was aware of the fact that [defendant] had choked [her]" while her 11-year-old brother was home and said, "[M]om, we can't do this no more, we need to get the police involved."

¶ 8        According to Fiello, defendant was living with her and her three children on November 15, 2023. Defendant returned to Fiello's home late in the night on November 14, 2025,

after drinking and "possibly" "partaking in drugs because [Fiello] had known him to do that before." The next day, Fiello was home sick, recovering from COVID-19, and her 11-year-old son was home with strep throat. At approximately 10:30 or 11 a.m., defendant offered to make Fiello some soup, but "within 30 minutes he said he had to run somewhere." When defendant returned, he was "agitated and upset." Fiello accused defendant of drinking or doing drugs, and "he just turned into a completely different person, very angry and began getting loud." Fiello said defendant was "pacing the house" and "is known for just being angry, and when he gets in those moods he's like that for hours possibly at times." Fiello said her argument with defendant "escalated" and "carried on for approximately two hours," with them "yelling back and forth." Fiello said she repeatedly asked defendant to leave, but he refused.

¶ 9 Fiello testified that she tried to get away from defendant because she knew "when he's in this state of mind he gets violent due to previous experiences with him." Fiello described the layout of her home: the back door leads to the family room, then there are two steps that lead to the kitchen, then the dining room. Fiello's son's bedroom is next to the dining room. He had his door open and "was very alert because of [defendant]'s behavior and the fact that [she and defendant] were arguing and yelling." Fiello said that as she was walking around a corner that led to the family room, defendant was "right behind" her, and he "pulled [her] back and pinned [her] against the wall and started choking [her]."

¶ 10 Fiello demonstrated how defendant choked her, with "one hand on top of the other hand in front of her throat around where the Adam's apple is," and he "appl[ied] pressure." She said the choking "didn't last long enough before [defendant] saw [her] son standing" nearby with a "bat in his hands." Fiello said her son obtained the bat from his sister's room. She said as soon as defendant realized her son had the bat, he immediately let her go. She stated: "It all happened

- 3 -

very quickly, and I truthfully thank God for my son being home that day. Even though that was a horrible experience for my son, had my son not been there it could have been ten times worse." When defendant had her against the wall, he was using "abusive language," "cursing," and "yelling." Fiello said she thought defendant was "high on something by the look in his eyes." According to Fiello, defendant's "eyes were bulging," and "he was sweating." She said defendant "smelled of" alcohol and had been "drinking pretty heavily the night before."

¶ 11 Fiello testified that defendant threatened to "bust the windows out" of her car and house. He told her to call the police and said he did not "care about going back to jail." He also said he was "done" with her and she was "going to regret this." At some point, defendant walked outside, and Fiello locked him out of the house. Defendant demanded that Fiello take him to his mother's house. Fiello drove defendant to his mother's house, which was 10 to 12 minutes away, with the baseball bat between her legs and her son sitting behind her. When she dropped defendant off, she said she wanted "nothing else to do with him."

¶ 12 Later that afternoon, Fiello called the police and asked for information about how to obtain an order of protection. The next morning, Fiello obtained an order of protection against defendant.

¶ 13 Fiello admitted that she was initially "hesitant to tell police officers what had happened" because she did not want "to be the reason somebody goes to jail or prison" and believed "deep down inside that [defendant] is a good person and that he needs help." Fiello eventually told the police what happened on November 15, 2023. She also told the police that defendant had been physically abusive before and showed them a photograph of her with her "lip being busted." She testified defendant did that "the first week of November." Fiello said that "a lot of [defendant's] behaviors literally came from nowhere." She explained that defendant "was

- 4 -

not taking his prescription medication that helps him and [she] knew he was doing other substances that could cause behavior like this." She said that on the day defendant hurt her lip, he pushed her up against the wall and elbowed her, "which caused [her] lip to bust." Fiello was on the phone, and defendant was trying to grab it from her. Prior to that, defendant had been "kicking and destroying things in [her] bedroom."

¶ 14        After defendant split Fiello's lip, Fiello was able to get away and ran toward the living room. Defendant then threw her on the couch and broke a table. Defendant got on top of Fiello with one hand over her mouth and nose and the other against her throat. Fiello was screaming and kicking to try to get defendant off her. Fiello said she was gasping for air before she "ran to the bathroom, and [she] started throwing up." Defendant followed her into the bathroom and started laughing and said she got what she deserved. Fiello grabbed her keys and left. She said that happened "around the first week of November," which would have been slightly more than a week before the November 15 incident.

¶ 15        After Fiello obtained the order of protection against defendant in mid-November, defendant asked her to "drop" it, but she told him she would not. She asked defendant to stop communicating with her, but he refused to do so. She had to change her phone number as a result. Fiello testified that her whole family was "[t]raumatized" by the incident. The State moved to admit the photograph of Fiello and her injured lip as an exhibit, which the trial court allowed over no objection.

¶ 16        On cross-examination, Fiello admitted that her relationship with defendant was troubled and involved arguments and occasional fights. She agreed that she decided on November 15, 2023, that she wanted to end the relationship and have defendant "removed from [her] home." She denied that she told officers about the choking incident only after the officers told her that

defendant "had potentially some property interest or some right" to be in the home. She admitted there were no injuries from the November 15, 2023, incident.

¶ 17    On redirect examination, Fiello said she told officers that she wanted defendant banned from her residence because she was "scared of him."

¶ 18    Officer William Shelton of the Bloomington Police Department testified that he was on patrol on November 15, 2023. He testified that he responded to Fiello's home at 3:30 p.m. that day. When he first met Fiello, she told him she "was concerned for her safety and her family's safety." He explained the process for obtaining an order of protection and encouraged Fiello to elaborate on what happened that day. As Fiello provided more details, she became extremely upset and started crying. She cried again when police questioned her son.

¶ 19    Defendant did not present any evidence. In describing the evidence, the trial court stated:

> "The accusations here are that he had his hands across her throat and was applying pressure. That's really hard for it to be mistaken or misconstrued or a misunderstanding what that intent was. It either happened or it did not, and that does stand or fall with the credibility of Danielle Fiello."

The court stated that it "found [Fiello] credible" and, therefore, found defendant guilty.

¶ 20    B. Sentencing and *Krankel* Inquiry

¶ 21    Defendant's sentencing hearing was held on January 30, 2025. The State emphasized defendant's prior history of criminal activity, pointing out that defendant had "five prior criminal convictions involving a victim who is a family or household member." The State asked the trial court to impose a three-year prison sentence, followed by four years of mandatory supervised release (MSR). Defense counsel recommended probation. Defendant provided a

statement in allocution.

¶ 22    The trial court sentenced defendant to three years in prison, to be served at 50%, followed by four years of MSR. Before the sentencing hearing ended, the court noted that defense counsel had told him defendant "wanted to raise some issues regarding to [*sic*] ineffective assistance."

¶ 23    After the trial court asked defendant to explain his complaints, defendant alleged that he "never had an opportunity for not one of my witnesses to come forward to say what they had to say, nothing." When the court asked if defendant had names of witnesses he told his counsel he wanted to be called, defendant responded, "My mother." When the court asked if defendant gave his attorney her name and contact information, he responded, "Never had the opportunity. Just like I just spoke to him before sentencing and I told him I have not even had the opportunity. I've been to the courthouse several times to talk with him. He's never available." Defendant confirmed that he never gave his attorney any contact information for any potential witnesses and said he "was never even able to sit down and explain this to him."

¶ 24    In response, defense counsel stated:

> "We had a number of pre-trial hearings—I think four—before the case was set for trial. I did at the Defendant's request engage in plea negotiations with the State. I talked with him every time the case came up for pre-trial.
>
> I don't believe there were any occurrence witnesses that I could have called and neglected to call."

The trial court then asked counsel, "You think any witnesses who had been identified weren't—didn't have any material information about the actual incident?" Counsel responded, "Correct." The court declined to appoint new counsel for defendant, finding that the information defendant

provided was "either conclusory, misleading, legally immaterial, or doesn't bring to the Court's attention colorable claims of ineffective assistance of counsel or pertains to trial strategy." Defendant filed a motion to reconsider his sentence, which the court denied.

¶ 25        This appeal followed.

¶ 26                                    II. ANALYSIS

¶ 27        On appeal, defendant raises two issues regarding the admissibility of evidence. However, defendant admits that he did not object at trial or file a posttrial motion raising them. Thus, these issues are forfeited, and defendant cannot raise them on appeal. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant, however, asks us to consider the merits of these issues by finding plain error or ineffective assistance of counsel. Thus, we will first introduce those doctrines and later apply them to the facts of this case.

¶ 28                        A. Plain Error/Ineffective Assistance

¶ 29        "The plain-error rule bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). We will apply the plain-error rule when:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 30        The first step in any plain-error analysis is determining whether an error occurred. *Thompson*, 238 Ill. 2d at 613. The defendant bears the burden of persuasion under plain-error

review. *Thompson*, 238 Ill. 2d at 613. Where there is no error, there can be no plain error. *People v. Johnson*, 218 Ill. 2d 125, 139 (2005).

¶ 31        A defendant can also avoid the procedural bar of forfeiture by arguing that his counsel was ineffective for failing to object at trial and raise the issue in a posttrial motion. We rely on the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), to determine if counsel's assistance was ineffective. *People v. Hodges*, 234 Ill. 2d 1, 17 (2009). "To prevail on a claim of ineffective assistance under *Strickland*, a defendant must show both that his counsel's performance 'fell below an objective standard of reasonableness' and that the deficient performance prejudiced the defense." *Hodges*, 234 Ill. 2d at 17 (quoting *Strickland*, 466 U.S. at 687-88). Prejudice under *Strickland* requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." (Internal quotation marks omitted.) *People v. Peterson*, 2017 IL 120331, ¶ 79. "A failure by the defendant to satisfy either prong of the *Strickland* standard precludes a finding of ineffective assistance." *Peterson*, 2017 IL 120331, ¶ 79.

¶ 32        "Plain-error review under the closely-balanced-evidence prong of plain error is similar to an analysis for ineffective assistance of counsel based on evidentiary error insofar as a defendant in either case must show he was prejudiced." *People v. White*, 2011 IL 109689, ¶ 133. If a defendant cannot show prejudice, he cannot establish either ineffective assistance or plain error under the closely-balanced prong, even if there was an error in the admission of evidence. *White*, 2011 IL 109689, ¶ 134. "Accordingly, where a defendant fails to show prejudice, a defendant's allegations of ineffective assistance of counsel and plain error under the closely-balanced-evidence prong both fail." *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 47 (citing *White*, 2011 IL 109689,

¶ 134). "Similarly, the failure of a defendant to show that an error occurred at all defeats both an ineffective assistance claim and a claim of error under either prong of the plain error doctrine." *Hensley*, 2014 IL App (1st) 120802, ¶ 47.

¶ 33    "The second-prong of the plain error rule can be invoked 'only in those exceptional circumstances where, despite the absence of objection, application of the rule is necessary to preserve the integrity and reputation of the judicial process.' " *People v. Jackson*, 2022 IL 127256, ¶ 28 (quoting *People v. Herrett*, 137 Ill. 2d 195, 214 (1990)). Our supreme court "has equated the second prong of the plain error rule with 'structural error.' " *Jackson*, 2022 IL 127256, ¶ 28 (quoting *Thompson*, 238 Ill. 2d 598, 613-14 (2010)).

> "In defining structural errors, the United States Supreme Court has explained that most constitutional errors can be harmless; if a defendant is represented by counsel and tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis." (Internal quotation marks omitted.) *People v. Moon*, 2022 IL 125959, ¶ 28.

The Supreme Court has "recognized an error as 'structural,' and subject to automatic reversal, only in 'a very limited class of cases.' " *Moon*, 2022 IL 125959, ¶ 28 (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)).

¶ 34    The United States Supreme Court has identified the following errors as structural errors: "a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction." *Moon*, 2022 IL 125959, ¶ 29. What all these second-prong plain errors have in common is that they "affect the framework within which the trial proceeds, rather

than mere errors in the trial process itself." *Moon*, 2022 IL 125959, ¶ 29.

¶ 35                                    B. Admissibility of Evidence

¶ 36                          1. *Fiello's Testimony About Prior Domestic Battery*

¶ 37          Defendant first argues that the trial court erred when it allowed the State to introduce evidence of a prior incident of domestic violence between himself and Fiello without "proper notice," as required by section 115-7.4 of the Code (725 ILCS 5/115-7.4 (West 2024)). Defendant admits that he did not object to this evidence at trial.

¶ 38          The admissibility of evidence is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *People v. Chambers*, 2011 IL App (3d) 090949, ¶ 10. "An abuse of discretion occurs where the trial court's ruling is arbitrary, fanciful or unreasonable, or where no reasonable person would take the view adopted by the court." *Chambers*, 2011 IL App (3d) 090949, ¶ 10.

¶ 39          "It is well settled under the common law that evidence of other crimes is admissible if relevant for any purpose other than to show a defendant's propensity to commit crimes." *People v. Chapman*, 2012 IL 111896, ¶ 19. "Those purposes include—but are not limited to—motive, intent, identity, lack of mistake and *modus operandi*." *Chapman*, 2012 IL 111896, ¶ 19. This common law rule has been codified in Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011). However, Rule of Evidence 404(b) states that it does not apply to propensity evidence admitted pursuant to sections 115-7.3, 115-7.4 and 115-20 (725 ILCS 5/115-7.3, 115-7.4., 115-20 (West 2024)) of the Code. See Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). Section 115-7.4 is relevant here and allows the State to introduce evidence of other domestic violence offenses in domestic violence prosecutions. The statute provides:

"(a) In a criminal prosecution in which the defendant is accused of an

- 11 -

offense of domestic violence \*\*\*, evidence of the defendant's commission of another offense or offenses of domestic violence is admissible, and may be considered for its bearing on any matter to which it is relevant.

(b) In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:

(1) the proximity in time to the charged or predicate offense;

(2) the degree of factual similarity to the charged predicate offense; or

(3) other relevant facts and circumstances.

(c) In a criminal case in which the prosecution intends to offer evidence under this Section, it must disclose the evidence, including statements of witnesses or a summary of the substance of any testimony, at a reasonable time in advance of trial, or during trial if the court excuses pretrial notice on good cause shown.

(d) In a criminal case in which evidence is offered under this Section, proof may be made by specific instances of conduct, testimony as to reputation, or testimony in the form of an expert opinion, except that the prosecution may offer reputation testimony only after the opposing party has offered that testimony." 725 ILCS 5/115-7.4 (West 2024).

¶ 40 At issue here is the disclosure provision of section 115-7.4, contained in subsection (c). While only one court has examined the requirements of that precise provision, other courts have examined identical disclosure provisions contained in section 115-7.3(d) of the Code (725 ILCS 5/115-7.3(d) (West 2024)), which is identical to section 115-7.4 except that it applies to prosecutions for sexual crimes, and Illinois Rule of Evidence 404(c) (eff. Jan. 1, 2011). The courts

that examined these identical provisions came to different conclusions about what notice is required, but all came to the same ultimate conclusion: the evidence was properly admitted.

¶ 41    In *People v. Braddy*, 2015 IL App (5th) 130354, ¶ 19, the Fifth District considered whether the State adequately put the defendant on notice that it intended to offer other-crimes evidence from a witness who accused the defendant of prior sexual abuse where the defendant was charged with sexual offenses and the State did not file a motion pursuant to section 115-7.3 of the Code (725 ILCS 5/115-7.3 (West 2010)). The court concluded that the State provided the defendant with adequate notice through its disclosures to the defendant by listing the name and address of the witness at issue and providing the defendant with the Illinois Department of Children and Family Services (DCFS) investigative report about the alleged incident that occurred between the defendant and the witness. *Braddy*, 2015 IL App (5th) 130354, ¶¶ 21-24. The court reasoned that "[t]he nature and substance of the testimony was evident from the DCFS summary disclosed over a year before trial." *Braddy*, 2015 IL App (5th) 130354, ¶ 23. Therefore, the court rejected defense counsel's assertion that he was " 'taken by surprise' " by the proposed testimony. *Braddy*, 2015 IL App (5th) 130354, ¶ 23. The court further stated:

> "We reject outright the defendant's claim that the notice was not adequate merely because the written disclosure did not cite to section 115-7.3. We find nothing in the statutory language that requires this designation. In sum, we find that the prosecution's disclosure of its intent to seek admission of other-crimes evidence met the requirements of section 115-7.3(d) in that the evidence was timely and adequately disclosed." *Braddy*, 2015 IL App (5th) 130354, ¶ 24.

¶ 42    Two years later, the supreme court considered whether the State provided sufficient notice to the defendant to introduce bad-acts evidence pursuant to Rule of Evidence 404(c). In that

case, the State included the witness's name on its witness list but did not include his name or the substance of his testimony in its "motion to admit bad-acts or other-crimes evidence" before trial. *Peterson*, 2017 IL 120331, ¶ 118. In its opening statement, the State referenced the witness's testimony, and the defendant objected, arguing that the evidence was testimony of a prior bad act that was not included in the State's pretrial motion. *Peterson*, 2017 IL 120331, ¶ 119. The trial court sustained the objection. *Peterson*, 2017 IL 120331, ¶ 119. Two days later, the State filed a motion *in limine* to admit the witness's testimony at trial, asserting that it did not do so sooner because it thought disclosure was not required by Rule of Evidence 404. *Peterson*, 2017 IL 120331, ¶ 120. After briefing and argument, the court determined that the witness's testimony was subject to the notice requirements of Rule of Evidence 404, but the State showed good cause for extending the deadline. Thus, the State's notice to the defendant in its motion *in limine* was timely. *Peterson*, 2017 IL 120331, ¶ 121. One week later, while the trial was still ongoing, the court granted the State's motion *in limine*. *Peterson*, 2017 IL 120331, ¶ 122. The next day, the State called the witness to testify. Defense counsel did not request a continuance and "conducted a lengthy cross-examination," challenging the witness's credibility. *Peterson*, 2017 IL 120331, ¶ 122. In his posttrial motion and on direct review, the defendant challenged the admission of the witness's testimony at trial. *Peterson*, 2017 IL 120331, ¶ 123. The appellate court held that the court did not abuse its discretion in allowing the witness to testify, noting that the witness's testimony was presented more than two weeks "after the State gave notice, defendant did not request a continuance, and defendant fully examined [the witness]." *Peterson*, 2017 IL 120331, ¶ 123 (citing *Peterson*, 2015 IL App (3d) 130157, ¶ 210). The supreme court, likewise, held that the defendant had adequate notice of the witness's testimony because he had previously testified at a pretrial hearing, the defendant did not ask for a continuance for further preparation, and the defendant

appeared to have fully cross-examined the witness. *Peterson*, 2017 IL 120331, ¶ 129. Thus, the supreme court also found no abuse of discretion in the court allowing the witness to testify. *Peterson*, 2017 IL 120331, ¶ 129.

¶ 43        Finally, in *People v. Valdez*, 2022 IL App (1st) 181463, ¶ 70, the First District considered whether the State properly disclosed a witness's testimony under section 115-7.4(c) (725 ILCS 5/115-7.4(c) of the Code (West 2020)). In *Valdez*, the State did not include information about a potential witness's testimony of a prior incident of domestic violence in a section 115-7.4(c) motion, but the testimony was included in a police report that the State disclosed to the defense in pretrial discovery. *Valdez*, 2022 IL App (1st) 181463, ¶¶ 72-73. After analyzing both *Braddy* and *Peterson*, the court concluded that the State violated the disclosure provision of section 115-7.4(c) by failing to include the witness's testimony in its pretrial motions to admit other-crimes evidence and that it was error for the court to allow that testimony. *Valdez*, 2022 IL App (1st) 181463, ¶ 84.

¶ 44        In support of its holding, the court relied on *Peterson*, explaining:

> "The *premise* of the supreme court's holding in *Peterson* is that it was not enough that the State turned over the witness statement and pretrial testimony and its intent to use that evidence at trial. To properly disclose, the State was required to disclose not only the evidence itself but its intent to *offer it as other-crimes evidence*, for a particular stated purpose. [Citation.] The State's failure to specifically disclose its intent to use this evidence as other-crimes evidence was what required an excuse, or a showing of good cause, in the first place.
>
> In short, the holding in *Braddy*, 2015 IL App (5th) 130354, ¶ 23, that disclosing the 'nature and substance of the testimony' is sufficient to satisfy an

other-crimes disclosure, cannot be reconciled with our supreme court's clear statement in *Peterson* that a specific intent to use that evidence as other-crimes evidence, for a particular purpose, is required. While that was not the direct holding in *Peterson*, it was the operative premise for the entire analysis; if merely disclosing the 'nature and substance' of the testimony had been sufficient as *Braddy* held, the supreme court would have had no need to consider whether to excuse the disclosure violation, for it would not have been a violation in the first place." (Emphases in original.) *Valdez*, 2022 IL App (1st) 181463, ¶¶ 80-81.

¶ 45 Nevertheless, the court in *Valdez* found that the State's failure to disclose the witness and her testimony in a section 115-7.4 motion did not "automatically entitle [the] defendant to relief"; she had to "show how the lack of pretrial notice prejudiced her ability to defend against the State's use of the evidence." *Valdez*, 2022 IL App (1st) 181463, ¶ 85. The court stated: "If the lack of pretrial notice impaired the defense, we have not been told how. And to our eye, we see none." *Valdez*, 2022 IL App (1st) 181463, ¶ 85. Specifically, the court found no evidence of prejudice because the defendant did not request a continuance and "effectively cross-examined" the witness. *Valdez*, 2022 IL App (1st) 181463, ¶ 85. Thus, while the admission of the witness's testimony without pretrial notice was error, the lack of notice did not prejudice the defendant and require reversal. *Valdez*, 2022 IL App (1st) 181463, ¶ 85.

¶ 46 Under *Braddy*, *Peterson*, and *Valdez*, the trial court here properly allowed Fiello's testimony about the prior domestic violence incident with defendant. Even though the State did not file a section 115-7.4 motion containing the substance of Fiello's testimony, its failure to do so was not fatal because defendant must also show how the lack of such motion prejudiced his ability to defend against the State's use of the evidence. See *Valdez*, 2022 IL App (1st) 181463,

¶ 85; *Peterson*, 2017 IL 120331, ¶ 128. Here, defendant failed to explain how the lack of a section 115-7.4 motion hindered his defense. Defendant never claimed that he was surprised by Fiello's testimony. In fact, the State claimed on appeal that the evidence was disclosed to defendant prior to trial, and defendant never refuted that fact.

¶ 47          We reject defendant's contention that because the State filed a section 115-7.4 motion that included other prior offenses but did not include the earlier incident of domestic violence between himself and Fiello, he did not have proper notice that the State would introduce the prior offense into evidence. First, the State withdrew its section 115-7.4 motion prior to trial, so it is irrelevant. Further, defendant does not dispute that he knew about the prior incident between him and Fiello, so he could not have been surprised when Fiello testified about it. That the State did not mention the incident in its withdrawn section 115-7.4 motion is of no import. Defendant was on notice that Fiello would testify about the prior incident of domestic violence, which is why he (1) never asked for a continuance, (2) was able to effectively cross-examine her, and (3) did not object to her testimony. Because defendant failed to show that he was prejudiced by the lack of a section 115-7.4 motion, the admission of Fiello's testimony about the prior incident was not a reversible error. See *Valdez*, 2022 IL App (1st) 181463, ¶ 85; *Peterson*, 2017 IL 120331, ¶ 128.

¶ 48                    2. *Hearsay and Alleged Prior Bad Acts*

¶ 49          Next, defendant argues that the State "elicited a number of statements vaguely referencing other prior bad acts, as well as impermissible evidence regarding his supposed reputation for violence." He further contends that much of the evidence was "either hearsay or was introduced as vague reputation evidence lacking any foundation or allegations of specific conduct." Defendant admits that he did not object to any of the statements.

¶ 50          Generally, evidence is admissible if it is relevant. Ill. R. Evid. 402 (eff. Jan. 1,

- 17 -

2011). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan 1, 2011). Evidence of other crimes or bad acts is relevant for any purpose other than to show a defendant's propensity to commit crimes. *People v. Stevenson*, 2014 IL App (4th) 130313, ¶ 44. "Evidence concerning the facts and circumstances of the crime the defendant is accused of committing is not other-crimes evidence." *Stevenson*, 2014 IL App (4th) 130313, ¶ 44.

¶ 51 "Hearsay evidence, an out-of-court statement offered to prove the truth of the matter asserted, is generally inadmissible unless an exception applies." (Internal quotation marks omitted.) *People v. Sorrels*, 389 Ill. App. 3d 547, 553 (2009). However, " '[a]n out of court statement offered to prove its effect on a listener's mind or to show why the listener subsequently acted as he did is not hearsay and is admissible.' " *Sorrels*, 389 Ill. App. 3d at 553 (quoting *People v. Gonzalez*, 379 Ill. App. 3d 941, 954 (2008)).

¶ 52 "[W]hen a trial court is the trier of fact a reviewing court presumes that the trial court considered only admissible evidence and disregarded inadmissible evidence in reaching its conclusion." *People v. Naylor*, 229 Ill. 2d 584, 603 (2008). "[T]he presumption that a court in a bench trial considered only competent evidence in reaching its finding 'may be rebutted where the record affirmatively shows the contrary.' " *Naylor*, 229 Ill. 2d at 603-04 (quoting *People v. Gilbert*, 68 Ill. 2d 252, 258-59 (1977)).

¶ 53 Here, defendant first argues that Fiello's daughter's statement to her that "we can't do this no more, we need to get the police involved" was inadmissible hearsay. We disagree because the statement was not offered for the truth of the matter asserted. Rather, it was offered to show its effect on Fiello, the listener, and to explain why she acted as she did. Defendant admitted

as much in his brief, explaining that the statement was used "to explain why [Fiello] called police on November 15, 2023." Because the statement was not offered for the truth of the matter asserted but to show its effect on Fiello and describe why she did what she did, the statement does not constitute hearsay and was properly admitted. See *Sorrels*, 389 Ill. App. 3d at 553.

¶ 54 Defendant also claims that several unsolicited statements by Fiello were used to describe his propensity to commit bad acts, such as her references to defendant drinking, using drugs, and being violent in the past. We disagree that Fiello's unsolicited references were used for propensity purposes. Rather, these statements were used to describe the events that occurred during her altercation with defendant on November 15, 2023. The statements were not made to cast aspersions on defendant or show that he was a bad person but were made to explain the circumstances surrounding the domestic battery, as Fiello testified to her belief that he had been drinking and using drugs that day and the night before. As such, they were not improper propensity evidence. See *Stevenson*, 2014 IL App (4th) 130313, ¶ 44.

¶ 55 Furthermore, this case was tried before a judge, not a jury. Therefore, we must presume, absent evidence to the contrary, that the judge considered only admissible evidence and disregarded inadmissible evidence in finding defendant guilty. See *Naylor*, 229 Ill. 2d at 603-04. Defendant has pointed to no evidence in the record showing or even suggesting that the trial court considered any incompetent evidence. Rather, the evidence showed that in making its decision in this case, the court mentioned only evidence relevant to the domestic battery at issue and ultimately determined that Fiello's testimony about the incident was credible. Thus, even if the court erred in allowing inadmissible testimony, defendant was not prejudiced.

¶ 56 C. Application of Plain Error/Ineffective Assistance of Counsel

¶ 57 Defendant concedes that he did not object to any of the errors he raised above.

However, he claims we should review his claims as either plain error or ineffective assistance.

¶ 58    As explained above, in order to establish plain error, the defendant must first establish that an error occurred. See *Johnson*, 218 Ill. 2d at 139. Secondly, to prove both plain error and ineffective assistance of counsel, the defendant must establish prejudice. See *White*, 2011 IL 109689, ¶ 134. Finally, to prove the second prong of plain error, the defendant must identify a structural error. See *Moon*, 2022 IL 125959, ¶ 28.

¶ 59    It is with these principles in mind that we hold that defendant has failed to establish first-prong plain error or ineffective assistance of counsel because has failed to show prejudice. First, defendant failed to allege or show that he was prejudiced when the court allowed Fiello to testify about the prior incident of domestic violence committed by defendant. See *Valdez*, 2022 IL App (1st) 181463, ¶ 85; *Peterson*, 2017 IL 120331, ¶ 128. Because defendant did not present any evidence of prejudice, defendant cannot establish first-prong plain error or ineffective assistance of counsel. See *White*, 2011 IL 109689, ¶ 134. *Hensley*, 2014 IL App (1st) 120802, ¶ 47. Second, Fiello's statements about defendant's drug and alcohol use and prior violence were not made for an improper purpose but to explain the circumstances surrounding the domestic violence incident and, thus, were not used as improper propensity evidence. Thus, no error occurred, and there can be no plain error or ineffective assistance in the absence of an error. See *Johnson*, 218 Ill. 2d at 139; *Hensley*, 2014 IL App (1st) 120802, ¶ 47. Finally, defendant was not prejudiced by any statements made by Fiello at his bench trial because we presume the court properly considered only the admissible evidence against him and disregarded any inadmissible evidence. See *Naylor*, 229 Ill. 2d at 603. Defendant has failed to show otherwise. Here, where defendant has failed to establish that any clear or obvious prejudicial error occurred, he cannot establish first-prong plain error or ineffective assistance of counsel. See *White*, 2011 IL 109689, ¶ 134; *Hensley*, 2014 IL

App (1st) 120802, ¶ 47.

¶ 60 Defendant also contends that second-prong plain error applies. However, defendant has failed to identify a structural error that was committed in this case. In arguing that second-prong plain error exists, defendant alleges the following errors: (1) the erroneous admission of other crimes and (2) "ineffective assistance of counsel." However, both issues relate to errors in the trial process itself, not errors that affect the framework in which the trial proceeds. Thus, even if these errors had occurred, which we hold they did not, they would not amount to structural errors under the second prong of plain error. See *Moon*, 2022 IL 125959, ¶ 29. Consequently, defendant's second-prong plain error claim is also without merit. See *Hensley*, 2014 IL App (1st) 120802, ¶ 47.

¶ 61 D. Preliminary *Krankel* Inquiry

¶ 62 Finally, defendant argues that he established that his counsel possibly neglected his case, so new counsel should have been appointed to address his *pro se* claims of ineffective assistance. Alternatively, he contends that the trial court failed to conduct an adequate preliminary *Krankel* inquiry into his allegations of ineffective assistance.

¶ 63 A *pro se* posttrial motion alleging ineffective assistance of counsel is governed by the procedure developed by the supreme court in *Krankel* and refined by its progeny. *People v. Roddis*, 2020 IL 124352, ¶ 34. "The procedure encourages the trial court to fully address these claims and thereby narrow the issues to be addressed on appeal." *Roddis*, 2020 IL 124352, ¶ 34.

¶ 64 A *pro se* defendant is not required to file a written motion alleging ineffective assistance of counsel but need only bring his claim to the trial court's attention. *Roddis*, 2020 IL 124352, ¶ 35. If the court determines that the claim lacks legal merit or pertains only to matters of trial strategy, then the court may deny the motion. *Roddis*, 2020 IL 124352, ¶ 35. If, on the other

hand, the allegations show possible neglect, new counsel should be appointed. *Roddis*, 2020 IL 124352, ¶ 35.

¶ 65    To determine whether a defendant is entitled to the appointment of counsel, the trial court must first ascertain the factual basis of the defendant's ineffective assistance claim. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). Some interchange between the court, the defendant, and defense counsel surrounding the alleged ineffective representation is usually necessary to assess whether further action is warranted. *Moore*, 207 Ill. 2d at 78. The court may (1) question defense counsel regarding the facts and circumstances of the claim, (2) discuss the issue with the defendant, or (3) consider the claim based on its own knowledge of the performance of counsel and the sufficiency of the allegations. *Moore*, 2017 Ill. 2d at 78-79. "The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *Moore*, 207 Ill. 2d at 78.

¶ 66    Whether the trial court properly conducted a preliminary *Krankel* inquiry presents a legal question that we review *de novo*. *People v. Jackson*, 2020 IL 124112, ¶ 98. However, if a court has conducted even a minimal *Krankel* inquiry and reached a determination on the merits of the defendant's *Krankel* motion, we will reverse only if the court's decision was manifestly erroneous. *Jackson*, 2020 IL 124112, ¶ 98. "Manifest error is error that is clearly evident, plain, and indisputable." *Jackson*, 2020 IL 124112, ¶ 98.

¶ 67    Here, after sentencing, the trial court conducted a preliminary *Krankel* inquiry after it was brought to the court's attention that defendant had some complaints about his counsel. During that inquiry, defendant asserted that he "never had an opportunity for not one of my witnesses to come forward to say what they had to say, nothing." The court asked defendant if there were names of witnesses that he told counsel he wanted to testify, and defendant responded,

"My mother." The court then asked defendant if he gave her name and contact information to his counsel. Defendant responded by saying, "Never had the opportunity." Defendant said he "was never even able to sit down and explain this to him." The court then asked defense counsel if he had a response. Defense counsel stated:

> "We had a number of pre-trial hearings—I think four—before the case was set for trial. *** I talked with him every time the case came up for pre-trial.
>
> I don't believe there were any occurrence witnesses that I could have called and neglected to call."

¶ 68    The trial court asked counsel if he thought the witness identified by defendant "didn't have any material information about the actual incident." Counsel agreed. The court then found that defendant's *pro se* ineffective assistance claim was "conclusory, misleading, legally immaterial, or doesn't bring to the Court's attention colorable claims of ineffective assistance of counsel or pertains to trial strategy" and declined to appoint defendant new counsel.

¶ 69    Here, the trial court conducted a sufficient preliminary *Krankel* hearing when it (1) discussed the issues with defendant, (2) questioned defense counsel regarding the facts and circumstances of the claim, and (3) considered the claim based on its own knowledge of the case. See *Moore*, 207 Ill. 2d at 78-79. By ascertaining the factual basis of defendant's ineffectiveness claim and questioning defendant and counsel to assess whether further action was warranted, the court fulfilled its duties under *Krankel*. See *Moore*, 207 Ill. 2d at 78.

¶ 70    Additionally, the trial court's decision to deny defendant's *pro se* claim of ineffective assistance following its preliminary *Krankel* inquiry was not manifestly erroneous. On appeal, defendant contends that he demonstrated possible neglect by his counsel "when he never once met with [defendant] in private to discuss his case, so [defendant] could disclose potential

witnesses willing to testify in his favor." We disagree with these assertions. When counsel was questioned by the court, he never said that he did not meet in private with defendant. He explained that he talked to defendant "every time the case come up for pre-trial," which counsel estimated to be four times. Additionally, defendant stated at the *Krankel* inquiry that he was never able to give his mother's name and contact number to counsel, but he failed to explain why he could not have done that when he met with his counsel during the pretrial hearings.

¶ 71        Here, the trial court carefully considered the *pro se* ineffective assistance claims made by defendant and determined that they lacked merit or related to matters of trial strategy. The record supports that conclusion because during the *Krankel* inquiry, defendant's only complaint was that no witnesses testified on his behalf. However, whether to call certain witnesses is a matter of trial strategy, which is generally left to the discretion of trial counsel. *Jackson*, 2020 IL 124112, ¶ 106. Allegations that relate to trial strategy cannot serve as the basis of a *Krankel* claim. *Jackson*, 2020 IL 124112, ¶ 106. Moreover, the only "potential witness" that defendant identified was his mother. Defendant's mother was not present when the charged domestic battery occurred, so she could not provide useful testimony about what happened. Defendant failed to identify any other "occurrence witnesses" who could testify in his favor, and defense counsel denied the existence of any other occurrence witnesses who could assist defendant's case. Thus, defendant's *pro se* ineffective assistance claim lacked merit. Under these circumstances, the court did not commit a "clearly evident, plain, and indisputable" error when it denied defendant's *pro se* claim of ineffective assistance of counsel without appointing new counsel for defendant. *Jackson*, 2020 IL 124112, ¶ 98.

¶ 72                                III. CONCLUSION

¶ 73        For the reasons stated, we affirm the trial court's judgment.

¶ 74        Affirmed.